(180 P.3d 1074)
No. 97,407

STATE OF KANSAS, *Appellee*, v. CHARLES FOSTER, *Appellant*.

Opinion filed April 11, 2008.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Mellissa Rundus*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MARQUARDT, P.J., GREEN and LEBEN, JJ.

LEBEN, J.: When Charles Foster entered into a plea-bargain agreement in which he agreed to plead no contest to aggravated assault, the State agreed to recommend probation if Foster's criminal-history score was level C or better. The sentencing report scored Foster's criminal history as level C, so the State was committed to recommend probation at the sentencing hearing. But

Foster's crime involved the use of a handgun, and K.S.A. 21-4704(h) provided that he could only receive probation if the trial court specifically found that probation would serve the interest of community safety by promoting Foster's reformation. At sentencing, the prosecutor recommended probation, but she otherwise provided only negative information about Foster. She never suggested that the court could properly grant probation under the statute. The prosecutor substantially violated the plea agreement by undercutting the required finding for granting probation without providing any support for the recommendation of probation.

When the State breaches a plea agreement, the defendant is denied due process. And the defendant's plea in this case clearly relied on the State's agreement to recommend probation. We must therefore vacate the sentence previously entered and remand for a new sentencing hearing at which the State will be bound to comply with the plea bargain it made.

*The Defendant Pleaded No Contest in Exchange for the State's Recommendation of Probation on a Presumptive-Prison Offense.*

Foster pleaded guilty to aggravated assault, a severity-level-7 person felony. At the plea hearing, the prosecutor summarized the facts supporting the charge. Foster and Angel Brown had been drinking at a bar and began arguing. After they went home, Foster held a loaded handgun to Brown's head. Brown's daughter then came into the room with a knife, and Foster put the gun down. By pleading no contest, Foster did not agree that these facts were true, but he implicitly conceded that the State could prove them to a jury beyond a reasonable doubt. See *State v. Green*, 283 Kan. 531, 547-48, 153 P.3d 1216 (2007). The prosecutor's summary of the facts generally tracked the testimony presented in the preliminary hearing; that testimony had been transcribed and was in the court file as of the date of the plea hearing.

When no special sentencing rules apply, a person convicted of a severity-level-7 felony has a presumptive-prison sentence if his or her criminal-history score is A or B, but that person would be presumptive probation with a score of C or better. The dividing line between a score of B or C is simple: the score is C if the

defendant has only one prior person felony, but the score is B with two prior person felonies.

But special rules can change the presumptive sentence found on the guidelines chart. Here, for example, K.S.A. 21-4704(h) makes this a presumptive-prison offense—no matter what the criminal history score may be—because the crime was committed with a gun. See also K.S.A. 21-4704(k) (crimes committed in association with any criminal street gang are presumptive-prison offenses); K.S.A. 21-4603d(f) (when new felonies are committed while the person is on bond, probation, or parole for some other felony, the new sentence may be imprisonment even if the defendant otherwise would be eligible for probation).

Everyone, from a criminal defendant to the attorneys representing both that defendant and the State, must carefully factor into plea negotiations the legal framework that may affect sentencing, including the guidelines chart and the special rules. In our case, it appears that the parties and their attorneys did not initially think about K.S.A. 21-4704(h), which made this a presumptive-prison offense. Instead, both the plea agreement and the notice of rights reviewed by the defendant assumed that he would be presumptive for probation so long as his criminal-history score was C or better.

In the plea agreement, the State agreed to a nonprison sentence if the defendant's criminal-history score was not A or B. And it specifically agreed not to argue for prison in the event the defendant turned out to have been on a felony bond, probation, or parole at the time this offense took place. Because the only sentencing options were prison or probation, the State properly understood this to mean that it would recommend probation. As the prosecutor summarized the plea agreement at sentencing, "The State did agree to probation in this case and that is our recommendation."

The written plea agreement also included a "Waiver of Rights" by the defendant. The waiver indicates that the parties' counsel understood—and told the defendant—that he would be *presumptive for probation* if his criminal-history score was C or better:

"I understand that any sentence I receive will be based on my criminal history score . . . .

"I understand that by entering this plea of nolo contendere to the charge of aggravated assault, a severity level 7, person felony, I have a presumption for probation provided a search of my past criminal history reveals that I have no more than one person and one nonperson felony . . . ."

The rights waiver did not mention any special sentencing rules, including the one applicable to crimes committed with a gun. But it did include a substantial waiver of Foster's rights in exchange for the prosecutor's recommendation of probation: Foster waived his right to a jury of his peers, to confront the witnesses against him, to testify on his own behalf, to his presumption of innocence, and to appeal his conviction to a higher court. These rights are not idly waived; the waiver was induced by the State's promise to recommend probation. See *United States v. Canada*, 960 F.2d 263, 269-70 (1st Cir. 1992).

After the defendant's plea was accepted, a presentence investigation was ordered, as required by K.S.A. 21-4714(a). The court services officer who prepared that report properly reviewed the potential special sentencing rules that might apply. The presentence-investigation report properly noted that the sentence was presumptive prison based on the special rule of K.S.A. 21-4704(h). No doubt this caused some concern to the defendant and his counsel, since both the plea agreement and rights waiver said that if his criminal-history score was C or better, the sentence recommendation would be presumptive probation.

Defense counsel responded by filing a motion for a dispositional departure, a motion that wasn't needed here at all. When no special rule applies, a dispositional-departure motion may be used as a means of getting probation when a defendant is presumptive for prison, or in getting a prison sentence when a defendant is presumptive for probation. When a special rule does apply, however, one must first look closely at that rule. And the special rule applicable here does not require any further motion to get probation. Rather, this statute gives the judge the ability to grant probation *if* certain fact findings are made:

" 'When a firearm is used to commit any person felony, the offender's sentence shall be presumed imprisonment. The court may impose an optional nonprison sentence upon making a finding on the record that the nonprison sanction will

serve community safety interests by promoting offender reformation. Any decision made by the court regarding the imposition of the optional nonprison sentence shall not be considered a departure and shall not be subject to appeal.' " K.S.A. 21-4704(h).

So, under the statute, Foster could still get probation, but only upon a finding that probation would promote the safety interests of the community by allowing for his reformation.

*The State Did Not Comply with Its Plea Agreement that It Recommend Probation When It Failed to Support the Required Findings for the Granting of Probation.*

We have set the stage for the evaluation of the prosecutor's remarks at sentencing by reviewing the sentencing statutes, the plea agreement, and the rights waiver. The parties entered into the plea agreement that assumed if Foster had a criminal-history score of C, he would be presumptive for probation. Foster had a score of C, but in fact he was always presumptive for prison since he committed the crime with a gun. For him to receive probation, the district court had to find that community safety interests would be served by giving Foster probation, and that probation would promote his reformation.

The same judge who took Foster's plea presided over the sentencing. He first called on the prosecutor for her comments.

The prosecutor's statements are significant both for what was said and what was not said. Although she recommended probation, she provided generally negative information about the defendant, and she never suggested that the trial judge could make the findings required in this case to grant probation. Because they are at the crux of this appeal, we set out in detail the prosecutor's comments about sentencing the defendant.

- She noted that the defendant could receive probation *only* if the court made findings that this would serve community safety interests by promoting offender reformation:

    "The State did agree to probation in this case and that is our recommendation. . . . According to K.S.A. 21-4704 the sentencing court may impose an optional nonprison sentence only upon the making of a finding on the record that a nonprison sanction will serve community safety interests by promoting offender reformation."

- She accused the defendant of making a "misstatement" about the key fact of whether the gun was loaded when he provided his summary of the facts to the presentence investigator. She contrasted the defendant's "misstatement" with the contrary testimony of others under oath and as a result strongly suggested that Foster had lied to the presentence investigator. Additionally, she emphasized that Foster had held the loaded gun to Angel's head:

  > "The defendant told the Court Services Officer that he played wrongfully with an unloaded firearm. The under oath statement given by the victims in this case at the preliminary hearing provided that in fact the gun was loaded. After removing the loaded gun from Miss Brown's head, her child provided that he followed her to her room, told her she did not see anything, and then unloaded the gun in front of her. She provided that testimony under oath. I believe Mr. Foster made a misstatement to the Court Services Officer."

- She then requested a no-contact order based on a claim that the week before sentencing, the defendant was stalking the victims, who were reported to have said they were "scared of" the defendant. She implicitly suggests that community safety interests are not served by probation when Foster is already stalking the victims while out on bond awaiting sentencing:

  > "[T]he State does recommend 27 months underlying, immediate probation for a period of 24 months. Additionally, we would ask for a no contact order. Miss Brown and her children were in court last Friday [and] expressed that they were scared of Mr. Foster, he continued to drive by their home, call their friends to find out where they were, and would very much like a no contact order."

- She did not provide any suggestion of a factual basis that might appropriately be used by the court to grant probation under K.S.A. 21-4704(h). She did not say that community safety interests would be served or that the offender reformation would be promoted by granting probation to Foster.

After these comments, the defense counsel then proceeded to argue for probation. She suggested that the potential conditions of probation outlined in the presentence investigation report (including treatment for alcohol abuse, which she said played a part in

this crime) supported a finding that the defendant was "an appropriate candidate for reformation within the community" rather than imprisonment. The prosecutor did not respond to these comments. Foster was sentenced to 27 months' imprisonment; his request for probation was denied.

Did the State comply with its bargain to recommend probation? Consider two out-of-state cases, one in which a breach of the plea agreement was found, and one in which no breach was found. The Idaho Court of Appeals found a breach in *State v. Wills*, 140 Idaho 773, 102 P.3d 380 (2004). The court cited a dictionary definition of recommend as "to mention or introduce as being worthy of acceptance, use, or trial." 140 Idaho at 776 (quoting Webster's New International Dictionary 1897 [3d ed. 1993]); see also *State v. Horness*, 600 N.W.2d 294, 299-300 (Iowa 1999) (relying on same definition of recommend to find a breach of plea agreement). When a prosecutor presented the recommended sentence as "the minimum" to be imposed and said the recommendation was made with "great restraint," the court held that "the prosecutor failed to endorse the recommended terms as ones the district court should accept." *Wills*, 140 Idaho at 776. The Wisconsin Court of Appeals found no breach in *State v. Zimmerman*, 2005 WL 613563 (2005) (unpublished opinion), even though the prosecutor provided detailed and negative comments about the defendant, including the conclusion that he did not "have any hope that rehabilitation ·is possible for the defendant." After the negative comments, the prosecutor proceeded to provide what the court found was "the only sensible reason" to place the defendant on probation—that it would promote payment of the past-due child support at issue in this criminal nonsupport case. There was no breach of the plea agreement because the prosecutor had provided a persuasive argument in support of the recommendation for probation, even though that recommendation ultimately was rejected by the sentencing judge. 2005 WL 613563, at *2, ¶¶ 6-7.

Foster's prosecutor said that she recommended probation, but the words she used do not meet the minimum requirements for a recommendation. Recommend means "to praise or commend (one) to another as being worthy or desirable," or "to make (the

possessor, as of an attribute) attractive or acceptable." American Heritage Dictionary 1460 (4th ed. 2000). The prosecutor here did not state anything that would cause an objective person to conclude that probation was worthy, desirable, attractive, or even acceptable.

A prosecutor does not need to be enthusiastic in making the recommendation agreed upon in the plea bargain. *United States v. Benchimol*, 471 U.S. 453, 455, 85 L. Ed. 2d 462, 105 S. Ct. 2103 (1985). But the prosecutor must at least *make* the recommendation, and the prosecutor may not so undermine the recommendation that only lip service has been paid to it. In our case, the recommendation of probation was meaningless unless the trial court could make the finding required by statute that community safety interests would be promoted through offender reformation if Foster were placed on probation. The prosecutor never said that such a finding would be proper in Foster's case and provided information that appears to the contrary. That breaches the plea agreement.

The State cites *State v. Hill*, 247 Kan. 377, 799 P.2d 997 (1990), in support of its argument that there was no breach here. In *Hill*, the defendant pleaded guilty to eight felonies, including first-degree murder, two counts of aggravated kidnapping, one count of attempted first-degree murder, and two counts of rape. The State agreed to recommend a controlling sentence of two consecutive life terms, with all other sentences to run concurrently with those. At sentencing, the prosecutor noted that the presentence-investigation report " 'set[] out the recommendations as entered into at the time of the plea bargain,' " but she did not restate them. 247 Kan. at 378. The prosecutor also noted that the victim statements " 'made it very clear that the victims' position[s] are that no amount of time in this case is going to be enough time for the damage' " done. 247 Kan. at 378-79. The court in *Hill* found no violation of the plea bargain, noting that the sentencing judge was aware of the plea recommendation and concluding that the prosecutor's remarks were not the equivalent of a contrary recommendation. 247 Kan. at 385-86.

Unlike *Hill*, the judge in our case needed to make a specific factual finding in order to adopt the recommended sentence. Un-

like our case, the prosecutor in *Hill* did not provide negative information undermining the factual basis required to adopt the recommended sentence. The question before the court in *Hill*—whether to make sentences concurrent or consecutive—was one squarely within the trial judge's discretion without the need for detailed findings. And the prosecutor in *Hill* referred the court to the presentence-investigation report, which set out the State's recommendation for sentencing as they had been agreed upon in the plea bargain.

The question before us in this case is admittedly a judgment call, and perhaps a close one based on existing Kansas precedents. No published Kansas appellate decision has found a violation on the basis that a prosecutor so undercut an agreed-upon sentencing recommendation through other comments that the recommendation itself was substantially undermined. In addition to *Hill*, two other Kansas Supreme Court cases have found no breach by the prosecutor's negative comments at sentencing. See *State v. Crawford*, 246 Kan. 231, 787 P.2d 1180 (1990) (the prosecutor's negative comments about the defendant did not breach the plea agreement because the State had reserved the right in that plea agreement to address statutory sentencing factors); *State v. Johnson*, 258 Kan. 100, 899 P.2d 484 (1995) (the prosecutor's presentation of negative facts about the underlying crime did not violate the plea agreement not to take a position on whether sentences should be concurrent or consecutive; trial court had sustained an objection to the State's argument as "getting perilously close" to violating the plea agreement, and the prosecutor had then quickly wrapped up the presentation).

We are assisted in making this judgment call, however, by two notions firmly established in Kansas law. First, especially since *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000), the Kansas Supreme Court has emphasized the special duties and responsibilities of prosecutors, " 'whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " 268 Kan. at 510 (quoting *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 [1935]); see *State v. Snow*, 282 Kan. 323, 339, 144 P.3d 729 (2006). Second, plea-bargain agree-

ments are generally subject to contract law, *State v. Boley*, 279 Kan. 989, Syl. ¶ 1, 113 P.3d 248 (2005), and Kansas law implies a duty of good faith and fair dealing in every contract. *Estate of Draper v. Bank of America*, 38 Kan. App. 2d 183, 189, 164 P.3d 827 (2007), *rev. granted* December 19, 2007. Thus, a party to any ordinary contract in Kansas may not do anything that would have the effect of destroying or injuring the right of the other party to receive the benefit of the agreement. 38 Kan. App. 2d at 189-90. Surely a public official with the special duties of a prosecutor must act with special care to fulfil—not sabotage—any term of a plea agreement that has induced the defendant to give up constitutionally protected rights and plead to a crime. See *State v. Sledge*, 133 Wash. 2d 828, 839, 947 P.2d 1199 (1997) (imposing implied promise on State to act in good faith in plea agreements based on implied contract duty of good faith and fair dealing).

Based upon similar notions, courts elsewhere have not hesitated in appropriate cases to find that a prosecutor violates a plea agreement when the prosecutor's words or actions cast substantial doubt on the recommendations of the plea bargain. See *United States v. Salazar*, 453 F.3d 911, 914 (7th Cir. 2006) (citing cases); *United States v. Gonczy*, 357 F.3d 50, 53-54 (1st Cir. 2004); *Wills*, 140 Idaho 773; *Horness*, 600 N.W.2d at 299-300; *State v. Jerde*, 93 Wash. App. 774, 970 P.2d 781 (1999); *State v. Williams*, 249 Wis. 2d 492, 518-23, 637 N.W.2d 733 (2002). These cases are consistent with Kansas law as well.

We do not suggest that the prosecutor was precluded from presenting any information relevant to the sentencing decisions the judge was required to make. The Supreme Court's decisions in *Crawford* and *Johnson* indicate that the State may do so. Here, although the prosecutor's reference to stalking and request for a no-contact order surely cast doubt on the appropriateness of probation, the prosecutor had a duty to present that request for a no-contact order and some information in support of it. Kansas law guarantees that victims be heard at sentencing proceedings, and it is usually the prosecutor who requests no-contact orders on behalf of victims. As the Wisconsin Court of Appeals concluded in *Zimmerman*, however, when the prosecutor provides negative infor-

mation that may lead the court to reject the recommended sentence, the prosecutor must also provide *some* rationale in support of it. The prosecutor did not even attempt to do so here.

When a plea agreement is breached, the defendant is denied due process. *State v. McDonald*, 29 Kan. App. 2d 6, Syl. ¶ 1, 26 P.3d 69 (2001). This is so even if the sentencing judge is not influenced by the State's presentation. *United States v. Hall*, 515 F.3d 186, 198 (3d Cir. 2008). The defendant's waiver of key rights was induced by the State's promised recommendation, and the defendant is entitled to receive the benefit of that bargain. *Canada*, 960 F.2d at 270-71. The State concedes in its brief that any breach here was not harmless because the defendant relied on the State's agreement to recommend probation when he entered his plea. The appropriate remedy here, as requested by the defendant, is that the case be remanded for a new sentencing hearing before a different judge with directions that the State comply with its agreement. *McDonald*, 29 Kan. App. 2d at 10-11.

The sentence entered in this case is vacated. The case is remanded for a new sentencing hearing before a different judge with directions that the State comply with the provisions of the plea agreement.

MARQUARDT, J.: I respectfully dissent from the majority opinion.

At Charles Foster's plea hearing, the district court went through an extensive interchange with him to make sure that he understood his plea and the implications of it:

"THE COURT: Okay. Count I of the Second Amended Information, Mr. Foster, alleges that on or about the 15th of February of this year you did unlawfully, feloniously, and intentionally place the person of Angel Brown in reasonable apprehension of immediate bodily harm with a deadly weapon, by putting a loaded gun against her head. This is a charge of aggravated assault. It is what is known as a Severity Level 7 person felony. There is a sentencing range of between 11 months and 34 months, and a fine of up to $100,0000 possible. Are you aware of that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: How do you plead to the charge, sir?

"THE DEFENDANT: No contest.

"THE COURT: Do you understand by pleading no contest to this charge that you give up your right to a trial either to this Court or to a jury?

"THE DEFENDANT: Yes, I do, Your Honor.

"THE COURT: And in doing that you give up your right to have the State prove your guilt beyond a reasonable doubt?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: You understand that you give up your right to confront and cross-examine the State's witnesses?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: You give up your right to subpoena witnesses to testify for yourself?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: And you give up your right to testify or to choose not to yourself. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Further, you would give up your right to appeal a conviction of this case if I find you guilty.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: And you understand that if the State provides a factual basis for this charge based upon your plea that I will find you guilty?

"THE DEFENDANT: Yes, Your Honor."

Foster did not idly waive these rights as the majority claims; he was given every opportunity to respond to the questions and did so deliberately and voluntarily.

After this exchange, the State gave an account of the facts which were the basis of the charge:

"Your honor, in the early morning hours of February 15th of this year Mr. Foster and his girlfriend Miss Brown had been drinking in a bar in Manhattan. They had a dispute over a cell phone. Miss Brown returned to the apartment they shared. She was in the restroom when Mr. Foster entered the home and they started yelling. He put a loaded gun to her head. He held the gun there. Her child was awakened by the noise, peeked through the bathroom door, saw what was happening, went to the kitchen, grabbed a butcher knife, came back and threatened Mr. Foster with a butcher knife at which point he then took the loaded gun away from Miss Brown's head. He took the loaded gun, emptied the magazine in the bedroom, told her daughter that she did not see anything and did not hear anything. This happened . . . in Manhattan, Riley County, Kansas."

The district court clarified that Foster's actions put Brown in immediate apprehension of bodily harm, and then found there was a factual basis for Foster's voluntary plea.

On April 28, 2006, a plea agreement was signed by Foster, his attorney, and the State, whereby Foster agreed to plead *nolo contendere* to aggravated assault and the State agreed to the following:

"2. The State agrees to dismiss the remaining charges herein and case #06CR39 with prejudice and to file no additional charges arising out of the same transaction or series of transactions.

"3. The State further agrees, specifically, to not file any charges against the defendant for letters to or contacts with the victim.

"4. The State further agrees that if the defendant's criminal history score is anything other than 'A' or 'B', they will not seek jail or prison time. The State further agrees that it will not seek prison if the defendant was on bond, probation or parole at the time of the commission of the crime he is pleading to."

The plea agreement then states: "There are no other agreements. . . . Other than what appears above, there have been no promises or inducements made to the defendant to get him to enter into this agreement."

After the plea agreement was signed and before sentencing, Foster filed a motion for a dispositional departure.

Foster's only argument on appeal is that "[t]he State violated the plea agreement by arguing that the district court should not impose the optional nonprison sanction described in K.S.A. 21-4704(h)." Foster's argument is totally without merit because the State never argued that the district court should not impose the nonprison sentence. The State followed the plea agreement and recommended probation for Foster.

At sentencing, the State made comments in response to Foster's motion for a departure sentence and his motion to strike the Court Appointed Special Advocate (CASA) report from the record. The State pointed out that Foster told the CASA interviewer that the gun he had used in the assault was not loaded; however, the sworn statements from the witnesses said it was loaded. In Foster's motion for a dispositional departure, Foster stated that "[t]he State has no objection to the Defendant's Motion for Dispositional Departure." When responding to this motion at sentencing, the State said:

"Additionally, in regards to the motion for dispositional departure, No.3, pursuant to the plea agreement the State agreed to probation, Your Honor, that's absolutely correct. The State did agree to probation in this case and that is our recommendation. However, No.4, the State has no objection to the defendant's motion for dispositional departure is not absolutely correct. I don't understand—the State does not find a basis for a dispositional departure. According to K.S.A. 21-4704

the sentencing court may impose an optional nonprison sentence only upon the making of a finding on the record that a nonprison sanction will serve community safety interests by promoting offender reformation. Furthermore, the statute provides that any optional nonprison sentence is not a departure but rather a decision left to the court and is not subject to appeal, so I don't think a dispositional departure is actually appropriate since the statute specifically lays out what actions the court can take if they do not sentence to prison."

The majority concludes at the beginning of its opinion that "[t]he prosecutor substantially violated the plea agreement by undercutting the required finding for granting probation without providing any support for the recommendation of probation." Because the State did not provide support for its probation recommendation, the majority finds that the State breached the plea agreement and thereby denied Foster due process. The majority concludes that the State was required under the plea agreement to make a statement at sentencing "that community safety interests would be served or that the offender reformation would be promoted by granting probation to Foster." There is nothing in the plea agreement that obligates the State to guarantee, or even suggest, that safety interests would be served or that Foster's reformation would be promoted by granting him probation. The majority ignores what the State agreed to do in the plea agreement and infers a duty on the State that was not part of the plea agreement.

The majority discusses *State v. Hill*, 247 Kan. 377, 799 P.2d 997 (1990), claiming that the prosecutor did not make any negative statements at the sentencing hearing when it recommended that the judge follow the plea agreement. I disagree. The prosecutor said:

" '[T]hose investigations were conducted in a thorough and competent, complete manner, of setting out the recommendations as entered into at the time of the plea bargain between the prosecution, the State.

" 'Further, Your Honor, I would like to state that the victim impact statement of that report made it very clear that the victims' position[s] are that no amount of time in this case is going to be enough time for the damage and for the crimes that have been committed against the State of Kansas, against the family of [D.B.], against [D.B.], and against [V.F.]. But that the Court is in a position, having reviewed this material, having heard the statements of fact which support the pleas of guilty and the convictions in this case, to at this time render a proper and appropriate sentence.' "

In *Hill*, as with the instant case, the defendant did not object to the statements made by the State. Both sentencing courts made it clear in *Hill*, and in this case, that it is not bound by the plea agreement or the State's recommendation. What is important in *Hill*, and in this case, is the fact that the same judge conducted both the plea and sentencing hearings.

The majority cites *State v. McDonald*, 29 Kan. App. 2d 6, 26 P.3d 69 (2001), to support its conclusion that a breach of the plea agreement occurred in this case. In *McDonald*, a panel of this court remanded McDonald's case to the district court for resentencing before a different judge. The *McDonald* court put a great deal of emphasis on the fact that one judge presided over the plea hearing and a different judge presided over the sentencing hearing. The court concluded that the sentencing judge "was not informed of the specifics of the plea agreement." 29 Kan. App. 2d at 10. In this case, the same judge presided over both the plea and the sentencing hearings, which made him well aware of the specifics of the plea agreement. In addition, Foster's record on appeal contains a full transcript of the preliminary hearing which details the crime Foster committed with a gun.

A federal case from another circuit, *United States v. Hall*, 515 F.3d 186, 198 (3d Cir. 2008), is cited by the majority for the proposition that when a plea agreement is breached, the defendant is denied due process, even if the sentencing judge is not influenced by the State's presentation. In the *Hall* case, the facts are very distinguishable from the instant case; however, the court in *Hall* found there was no breach even though the government made many statements that could have been construed as a breach of the plea agreement. It is hard to imagine how this case can be used as support for the majority opinion.

The majority also cites *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992), as support for its conclusion, stating that the "defendant's waiver of key rights was induced by the State's promised recommendation, and the defendant is entitled to receive the benefit of that bargain."

Initially, it is important to note that *Canada* is a federal circuit case and is not binding in Kansas. However, the plea agreement in

*Canada* clearly noted that the "agreement does not and cannot bind the sentencing judge." In this case, Foster was told at the plea hearing that the plea agreement does not bind the sentencing judge. Foster was specifically questioned about his understanding of this issue:

"THE COURT: The plea agreement which has been handed to me contains certain recommendations which will be made at the time of sentencing in this case. Do you understand that those recommendations are not binding on this court?

"THE DEFENDANT: Yes Your Honor."

More significant is that the facts in *Canada* differ greatly from the facts here. In *Canada,* the government agreed to recommend that the court sentence Canada to 36 months' incarceration. At sentencing, the government attorney did not recommend that the court impose the 36-month sentence; instead, the government attorney asked the court to impose a "substantial period of incarceration." 960 F.2d at 269. In addition, the government attorney requested an order of full restitution, which was not part of the plea agreement.

At sentencing in this case, the State recommended that the court follow the plea agreement and order probation: "[T]he State does recommend 27 months underlying, immediate probation for a period of 24 months." This was not a breach of the plea agreement; it was exactly what the State agreed to recommend. As the majority points out, when a firearm is used to commit a felony, the court may impose a nonprison sentence only "upon making a finding on the record that the nonprison sanction will serve community safety interests by promoting offender reformation." The comment made by the State that the majority criticizes are exact words from K.S.A. 21-4704b(f)(3). These words can in no way be construed as contradicting the plea agreement and would have had little effect on the district court, which is bound to follow the law.

In sentencing Foster, the district judge stated:

"With regard to the charge with which this defendant was—of which this defendant was convicted— aggravated assault with a handgun—that is deeply concerning to the Court. You explained the defendant's actions because—and it's not excusing him, and that's true there's no excuse for it, but you explained it because the

defendant was intoxicated at the time. There's no more dangerous combination than alcohol and a loaded handgun as far as I'm concerned. Prior to sentencing guidelines this would be a mandatory prison sentence because a handgun was involved. This defendant has earned his way through eight convictions in the State of Ohio—prior convictions in the State of Ohio to the criminal history that he apparently has which makes him presumptive prison. The Court finds no basis to deviate from the presumptive prison and I'm going to decline to go along with the State's recommendation for probation."

The district court gave compelling reasons for not following the plea agreement. In addition, Foster received a presumptive guidelines sentence. An appellate court lacks jurisdiction to consider a presumptive guidelines sentence. See *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000).

Foster's appeal should either be dismissed, or the district court's decision should be affirmed.