NOT DESIGNATED FOR PUBLICATION

No. 113,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALLAS L.E. PATTERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed August 5, 2016. Sentence vacated and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellant Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.

*Per Curiam*: Dallas L.E. Patterson entered into a plea agreement with the State and pled no contest to one count of indecent liberties with a child. The district court denied Patterson's motion for a downward dispositional departure and sentenced him to 50 months' imprisonment with lifetime postrelease supervision. On appeal, Patterson argues the State violated the terms of the plea agreement by arguing against Patterson's motion for a downward dispositional departure. For the reasons stated below, we agree. Accordingly, we vacate Patterson's sentence and remand for resentencing before a different judge with directions for the State to comply with the provisions of the plea

1

agreement at sentencing. Given this disposition, there is no need to address Patterson's second argument on appeal that the district court violated his Sixth and Fourteenth Amendment rights under the United States Constitution pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used his prior convictions to increase his sentence without requiring the State to prove their existence beyond a reasonable doubt.

FACTS

On April 16, 2014, an off-duty law enforcement officer working as a security officer at the Topeka Shawnee County Public Library saw Patterson sitting at a computer station next to D.T., a 15-year-old female. The officer saw Patterson kiss D.T. on the cheek and grab her buttocks as she stood up. D.T. then walked away from Patterson and headed toward the restroom. The officer confronted D.T., learned her age, and learned she met Patterson through Facebook the year before. The officer informed D.T. that Patterson was 24 years old and a registered sex offender. The officer then spoke with Patterson. He denied knowing D.T.'s age but said he became aroused when he touched her. Based on this information, the State charged Patterson with indecent liberties with a child pursuant to K.S.A. 2013 Supp. 21-5506(a), a severity level 5 person felony.

On May 12, 2014, the district court ordered Patterson to be evaluated by Dr. David Blakely to determine whether he was competent to stand trial. Based on a personal interview with Patterson that lasted about 1 hour and a review of Patterson's electronic medical records at the jail, Dr. Blakely submitted a report dated May 22, 2014, stating his opinion that Patterson was competent to stand trial. Dr. Blakely's report was filed with the court on May 23, 2014. At a competency hearing held on June 26, 2014, the parties' stipulated to the admission of Dr. Blakely's report and the information contained in the report. Based on Dr. Blakely's medical opinion, the court ultimately found Patterson

2

competent to stand trial. The court then scheduled the matter for a preliminary hearing to be held on July 10, 2014.

On July 1, 2014, Patterson agreed to enter a plea of no contest to the charge of indecent liberties with a child. In exchange for his plea, the State agreed to recommend the standard number in the sentencing grid. The State further agreed "to recommend a dispositional departure to probation with ISP/CC for a term of 36 months" if Patterson "attain[ed] a mental health evaluation and [began] to follow the recommendations prior to Sentencing." Finally, the State agreed not to recommend a finding that Patterson is a persistent sex offender.

In addition to the above, the plea agreement also included the following admonition, which Patterson duly acknowledged when he signed the document:

> "I understand that the State will not be bound by any sentencing recommendation and may make any other sentencing recommendation it deems appropriate in the event I do not cooperate as described above or if I am arrested, or if I commit a new offense, or if I violate my bond conditions, or if I fail to appear at any court appearance. I also understand that in the event of any probation violations, the State reserves the right to make an independent recommendation regarding disposition."

Sentencing originally was scheduled for August 14, 2014, but was continued several times without any objection by the State. On August 28, 2014, Patterson completed his mental health evaluation. Although the written report from the August 28, 2014, mental health evaluation is not included in the record, Patterson's pretrial services officer, Patterson's attorney, and the district court make reference to it. The report was written by Dr. Blakely and specifically incorporated the information and findings set forth in his initial May 22, 2014, mental competency report. In the August 28, 2014, report, Dr. Blakely recommended that Patterson (1) obtain a sex offender evaluation and (2) receive sex offender treatment.

3

Based on Dr. Blakely's recommendations, Patterson's attorney requested Dr. Mitchell Flesher to evaluate Patterson's risk of recidivism as a sex offender. On February 6, 2015, Dr. Flesher conducted a personal clinical interview with Patterson and administered a variety of psychological tests. Dr. Flesher ultimately drafted a 9-page Report of Psychological Evaluation dated February 8, 2015. The information in the report was based on Dr. Flesher's clinical interview, the psychological test results, referral information received from Patterson's attorney, and investigation records from the Shawnee County Sheriff's Office. The report from this evaluation assessed Patterson's actuarial risk of recidivism to be in the moderate to high range with a probability of less than 10% and recommended mental health treatment (for bipolar disorder and posttraumatic stress disorder) as well as cognitive-behavioral sex offender treatment.

The sentencing hearing was held on March 13, 2015. Prior to sentencing, Patterson filed a motion for dispositional departure requesting the district court impose a sentence of probation. Patterson cited to the following factors in support of his request for probation:

- Patterson was amenable to adhering to the terms and conditions of probation;
- The victim in this case experienced very little harm;
- Patterson's prior conviction was old;
- The interests of the community would be promoted by a nonprison sanction;
- Patterson posed no danger to society;
- Patterson was gainfully employed;
- Patterson was willing to have no contact with the victim in the case;
- Patterson previously had used available services to be successful on probation; and
- The State also recommended a dispositional departure to probation.

4

At sentencing, Patterson asked the court to follow the sentencing recommendations set forth in the parties' plea agreement. Specifically, Patterson requested the court impose an underlying sentence of the standard number in the sentencing grid and grant his motion for dispositional departure to 36-month probation, which was the sentencing recommendation of the State as well.

When it was the State's turn to argue, however, it asked the district court to deny Patterson's departure motion. Specifically, the State claimed that the plea agreement only required it to recommend a dispositional departure to 36 months' probation if, and only if, Patterson obtained a mental health evaluation and began to follow the recommendations in the resulting report prior to sentencing, which the State alleged Patterson did not do. In support of this allegation, the State claims the significant delay between when Patterson was ordered to obtain the evaluation and when he actually obtained the evaluation readily establishes a breach of the plea agreement. On this point, the State argued that although Patterson might have complied with the letter of the agreement, he certainly violated the spirit of it. Based on its claim that Patterson did not fulfill his obligations under the plea agreement, the State argues it was free to argue against his departure motion.

After reviewing the evidence, testimony, and argument on this issue, the district court found Patterson failed to fulfill his obligations under the plea agreement and, therefore, the State was free to argue against his departure motion. The court then took up Patterson's motion for dispositional departure. After hearing testimony and argument on the departure issue, the district court denied Patterson's motion and sentenced him to 50 months' imprisonment with lifetime postrelease supervision.

ANALYSIS

1. *Breach of plea agreement*

Patterson argues the State breached the promise it made in the plea agreement to recommend that the court impose a dispositional departure to probation as Patterson's sentence.

    a. *Preservation*

The State asserts this court should not consider the issue presented by Patterson on appeal because (1) Patterson did not raise the issue or otherwise object to the State's sentencing recommendation at the sentencing hearing and (2) Patterson did not file a motion to withdraw his plea after sentencing. Patterson acknowledges he did not affirmatively raise the issue before the district court at the time he was sentenced or thereafter. But the fact that Patterson did not affirmatively raise the issue before the sentencing court is immaterial under the facts of this case because the opposing party submitted the issue to the sentencing court for decision. Specifically, the State asked the district court to find that Patterson failed to fulfill his obligations under the plea agreement and, as a result, to then find that the State was no longer bound by the promise it made in the plea agreement to recommend Patterson receive a dispositional departure sentence to probation.

Even if the issue had not been presented to the sentencing court for decision, we still would address the merits of Patterson's claim on appeal that the State breached the terms of the plea agreement by failing to recommend a dispositional departure to probation. Although a theory not asserted before the trial court generally cannot be raised for the first time on appeal, there are three exceptions to the rule: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of

justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Here, Patterson's claim that the State violated the plea agreement involves only a question of law arising on proved or admitted facts and is determinative of the case. See *State v. Urista*, 296 Kan. 576, 582-83, 293 P.3d 738 (2013) (whether State breached plea agreement is question of law). In addition, consideration of Patterson's claim is necessary to serve the ends of justice or prevent the denial of a fundamental right. See 296 Kan. at 583 ("If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process.").

    b. *Applicable law*

Whether the State breached the plea agreement presents a question of law over which this court's review is unlimited. *Urista*, 296 Kan. at 582-83; *State v. Antrim*, 294 Kan. 632, 634, 279 P.3d 110 (2012). Interpretation and enforcement of plea agreements is generally subject to contract principles. *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 (2010).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process. *Urista*, 296 Kan. at 583; see *State v. Wills*, 244 Kan. 62, 67-68, 765 P.2d 1114 (1988); *State v. Foster*, 39 Kan. App. 2d 380, 390, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008); *State v. McDonald*, 29 Kan. App. 2d 6, Syl. ¶ 1, 26 P.3d 69 (2001). This is true even if the record indicates that the district court's sentencing decision was not influenced by the State's actions at sentencing. *Foster*, 39 Kan. App. 2d at 390.

"[A] plea agreement is generally subject to contract principles." *Copes*, 290 Kan. at 217. Accordingly, the "application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances." 290 Kan. at 217; see *State v. Boley*, 279 Kan. 989, 992-93, 113 P.3d 248 (2005) (same). Kansas courts have recognized that contracts, with the exception of at-will employment agreements, contain implied covenants of good faith and fair dealing. *Estate of Draper v. Bank of America*, 288 Kan. 510, Syl. ¶ 13, 205 P.3d 698 (2009); see *Foster*, 39 Kan. App. 2d at 388-89 (applying implied covenants of good faith and fair dealing to plea agreement). Furthermore, "[t]he law implies that contractual provisions requiring the exercise of judgment or discretion will be honestly exercised and faithfully performed." *Lessley v. Hardage*, 240 Kan. 72, Syl. ¶ 7, 727 P.2d 440 (1986). Thus, parties to a plea agreement must act fairly and in good faith in carrying out the promises they have made.

The State breaches a plea agreement by explicitly failing to fulfill an agreed-upon promise, such as failing to make a sentencing recommendation to the district court that it promised it would make. See *Santobello*, 404 U.S. at 257-59 (State violated plea agreement by recommending 1-year sentence at sentencing; in plea agreement, State agreed not to make any sentencing recommendation); *McDonald*, 29 Kan. App. 2d at 10-11 (State violated plea agreement by telling district court at sentencing that State did not oppose granting defendant's downward dispositional departure motion but reminded court of factual findings it would have to make in order to grant motion; in plea agreement, State promised to recommend 24 months' probation consecutive to defendant's sentence for parole violation).

A plea agreement reasonably susceptible to different interpretations is ambiguous. An ambiguous plea agreement must be construed in favor of the accused. *Wills*, 244 Kan. at 69.

8

c. *The terms of the plea agreement*

The material terms of the plea agreement at issue here are simple, plain, and unambiguous:

- Patterson promised to (1) enter a plea of no contest to the charge of indecent liberties with a child and (2) undergo a mental health evaluation and begin to follow the recommendations from that evaluation prior to sentencing.
- The State promised to (1) recommend a dispositional departure sentence to 36 months' probation with an underlying sentence of the standard number of months in the sentencing grid and (2) not recommend a finding that Patterson is a persistent sex offender.
- The parties agreed the State would not be bound by any sentencing recommendations promised in the plea agreement and, in fact, could make any other sentencing recommendations it deemed appropriate if Patterson did not "cooperate" as promised in the agreement.

Patterson argues the State breached the terms of the plea agreement by failing to make the recommendations promised in that agreement. The State responds that it was discharged from any obligation to make the sentencing recommendations promised in the plea agreement because Patterson failed to satisfy his obligations under it. Specifically, the State claims Patterson breached the agreement by failing to obtain a sex offender evaluation and failing to attend sex offender treatment prior to sentencing. But Patterson had no obligation under the express terms of the plea agreement to obtain a sex offender evaluation and attend sex offender treatment prior to sentencing. Under the agreement, Patterson was required to: (1) obtain a *mental health evaluation* and (2) *begin* following the recommendations prior to sentencing. The plea agreement did not require that Patterson *complete* all recommendations prior to sentencing, only that he *begin* to follow

9

them. And the agreement did not specify any particular date for Patterson to begin following the recommendations, only that he do so prior to sentencing.

Although the State was aware Patterson had a prior conviction for a sex offense, it included nothing in the plea agreement that could be construed as requiring Patterson to obtain a sex offender evaluation or treatment prior to sentencing. With that said, we readily acknowledge that the March 2014 mental health evaluation ultimately recommended a sex offender evaluation and sex offender treatment. But the State's claim that Patterson breached the terms of the plea agreement is based on Patterson's failure to obtain a sex offender evaluation and failure to attend sex offender treatment prior to sentencing, neither of which are terms of the agreement. At best, the State mischaracterizes the language of the plea agreement, and at worst, the State directly misstates it. Attorneys have a duty of candor to the tribunal; they may not knowingly make a false statement of fact to the court. See Kansas Rules of Professional Conduct (KRPC) 3.3(a)(1) (2015 Kan. Ct. R. Annot. 601) (candor toward tribunal). It appears the State's review of the language in the plea agreement here was lacking either in candor or in thoroughness. See KRPC 3.3(a)(1); KRPC 1.1 (2015 Kan. Ct. R. Annot. 442) (thoroughness).

Patterson's first obligation in the plea agreement was to obtain a mental health evaluation prior to sentencing, which he did as reflected by the August 28, 2014, report referenced in the sentencing transcript by Patterson's pretrial services officer, Patterson's attorney, and the district court. In the August 28, 2014, report, Dr. Blakely recommended that Patterson (1) obtain a sex offender evaluation and (2) receive sex offender treatment. In order to satisfy his second obligation under the plea agreement, Patterson must have *begun* the process of (1) obtaining a sex offender evaluation prior to sentencing and (2) receiving sex offender treatment prior to sentencing. As to the first requirement, Dr. Flesher conducted a comprehensive sex offender evaluation on February 6, 2015, and

ultimately drafted a 9-page report dated February 8, 2015, assessing Patterson. Dr. Flesher recommended cognitive-behavioral sex offender treatment.

With regard to the second requirement—whether Patterson *began* the process of receiving sex offender treatment—we have to delve a little deeper into the record. At all times relevant to this matter, Patterson received disability benefits due to various mental health issues. His monthly income prior to sentencing was $637. According to the testimony at the sentencing hearing from Patterson's bond supervisor, there simply were no sex offender treatment programs available for indigents in Shawnee County. If the court had granted Patterson's motion for a downward dispositional departure to probation as contemplated by both parties at the time the plea agreement was executed, Patterson would have been eligible for the sex offender treatment program at Clinical Associates in Topeka at a significantly discounted—and affordable—cost of $40 per week. These facts establish that Patterson was unable to afford treatment prior to sentencing but he began *setting up* treatment—a prerequisite to *attending* treatment—with Clinical Associates, which he would have been able to afford had he been placed on probation. Accordingly, we find Patterson *began* complying with the recommendations of the mental health evaluation prior to sentencing. Based on the testimony of Patterson's bond supervisor, a witness presented by the State, it appears there simply were no other steps Patterson could have taken toward compliance with this requirement.

Because Patterson "cooperate[d]" as he promised to do in the plea agreement, the district court erred in concluding that the State was discharged from its obligation under the plea agreement to (1) recommend a dispositional departure sentence to 36 months' probation with an underlying sentence of the standard number of months in the sentencing grid and (2) not recommend a finding that Patterson is a persistent sex offender.

d. *Remedy*

Patterson has requested this court vacate his sentence and remand for resentencing before a different judge with directions that the State comply with the provisions of the plea agreement at sentencing. This is the appropriate remedy. An order to direct sentencing before a new judge in no way reflects on the district court judge who originally sentenced Patterson; rather, it best serves the appearance of judicial neutrality. See *Urista*, 296 Kan. at 595.

2. *Criminal history*

Because we vacate Patterson's sentence and remand for resentencing, we decline to address his second argument on appeal that his rights under the Sixth and Fourteenth Amendments were violated by the district court's use of his prior convictions to calculate his criminal history score. We note in passing, however, that our Supreme Court has consistently rejected this argument. See, *e.g.*, *State v. Snellings*, 294 Kan. 149, 167, 273 P.3d 739 (2012) ("the use of prior convictions for sentencing enhancement is constitutional"); *State v. Bennington*, 293 Kan. 503, Syl. ¶ 9, 264 P.3d 440 (2011); *State v. Riojas*, 288 Kan. 379, 388, 204 P.3d 578 (2009); *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002).

Sentence vacated and remanded for resentencing before a different judge with directions that the State comply with the provisions of the plea agreement at sentencing.