NOT DESIGNATED FOR PUBLICATION

No. 127,780

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER A. DAVIS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Submitted without oral argument. Opinion filed October 3, 2025. Vacated and remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: Tyler A. Davis appeals his sentence after pleading guilty to battery against a law enforcement officer, two counts of aggravated battery, and fleeing or attempting to elude a police officer. He contends the State breached the plea agreement by opposing probation at sentencing and that the district court erred by adding conditional language to the jail time credit in the journal entry. We find the State breached the agreement; therefore, we vacate the sentence and remand for resentencing before a different judge. This disposition leaves the jail credit issue unripe for review.

1

In May 2023, Davis signed a plea agreement with the State in which he agreed to plead guilty to four charges from July 4, 2022:  battery against a law enforcement officer, two counts of aggravated battery, and fleeing or attempting to elude an officer. In return the State agreed to dismiss the remaining counts.

The agreement outlined sentencing recommendations, only two of which are at issue here.

> "d. The State will recommend that the statutory presumption, believed to be prison pursuant to special rule #9, be followed;

> "e. The defendant will be free to argue, which the State will oppose."

With a criminal history score of C, Davis' offenses fell within the presumptive probation boxes under the revised Kansas Sentencing Guidelines Act (KSGA). See K.S.A. 21-6804(a). And it is undisputed that Special Rule 9 applies here, as the crimes occurred during postrelease supervision. Special Rule 9 permits the court to impose prison without a departure motion but does not alter the underlying presumption of probation. See K.S.A. 21-6604(f)(1).

At the plea hearing, the prosecutor recited the terms of the agreement, which Davis and his counsel affirmed they understood. Davis signed a written plea agreement reflecting these provisions, and the court accepted his guilty pleas. During sentencing, the court noted that the plea agreement invoked Special Rule 9, which applied because Davis had committed these offenses while on postrelease supervision in two prior cases. Defense counsel urged the court to forgo the special rule and grant probation.

But the State, through a legal intern, countered by advocating imprisonment under Special Rule 9, emphasizing Davis' risk to the community, resistance to probation, and squandered chances for drug treatment. The legal intern informed the district court that if it chose to depart from imposing Special Rule 9, it would need substantial and compelling reasons. Defense counsel countered that the district court required no substantial or compelling reasons to impose the presumptive probation. He explained that although Special Rule 9 applied, "it says that the court may impose prison, that prison is not the presumption. The presumption is probation."

The court agreed with defense counsel that Special Rule 9 did not shift the presumptive disposition from probation to prison. Even so, it imposed a 39-month prison term, grounded in Davis' criminal history, prior probation failures, and ongoing drug addiction.

The journal entry granted 192 days of jail credit but included a condition against duplication if applied in Davis' other cases, 20CR1910 and 21CR1364. Davis timely appeals.

ANALYSIS

*The State breached the plea agreement.*

We begin and end with Davis' claim that the State breached the plea agreement. Whether the State breached a plea agreement is a question of law over which appellate courts have unlimited review. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015).

Generally, issues must be raised in the district court to preserve them for appeal, but exceptions exist when review serves the ends of justice or prevents denial of fundamental rights. *State v. Bell*, 65 Kan. App. 2d 160, 170-71, 561 P.3d 562 (2024). The

3

record shows no objection to the State's sentencing recommendation comments. But claims of plea breaches involve due process and qualify for this exception, even without a contemporaneous objection. *State v. Meyer*, 51 Kan. App. 2d 1066, 1070, 360 P.3d 467 (2015). Accordingly, we proceed to examine the claim, despite Davis' failure to object before the district court.

Plea agreements operate under contract principles, binding both sides. *State v. Frazier*, 311 Kan. 378, 382, 461 P.3d 43 (2020). A plea depends on the prosecutor's promise or agreement, which must be fulfilled if it serves as an inducement or consideration for the plea. If the State fails to honor this promise, the defendant's due process is violated, regardless of whether the State's actions influenced the district court's sentencing. *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021) (quoting *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 [2013]).

The plea agreement called for recommending "the statutory presumption, believed to be prison pursuant to special rule #9." Davis reads this as a commitment to probation, given his grid placement, with Special Rule 9 only allowing discretionary prison without altering the presumptive probation. See K.S.A. 21-6604(f)(1). The State sees it as permitting opposition to probation.

We construe ambiguities in plea agreements against the State, as the typical drafter, to safeguard due process. *Bell*, 65 Kan. App. 2d at 172-73. For these offenses, based on Davis' 7-C grid placement under the KSGA for nondrug offenses, the presumption is probation. K.S.A. 21-6804(a). Special Rule 9 does not overturn this presumption but simply allows the district court to opt for prison without a formal departure. K.S.A. 21-6604(f)(1). Therefore, the phrase "believed to be prison" in paragraph 2(d) reflects a mutual mistake, but statutory presumptions govern such mistakes. Recommending the "statutory presumption" therefore means probation. The "free to argue" provision in 2(e) lacks clarity—what exactly may the defendant argue?

4

The plain meaning of the agreement is that the parties agreed the presumption would apply—here, probation.

The structure of this plea bargain and the State's conduct at sentencing mirror the circumstances in *State v. Foster*, 39 Kan. App. 2d 380, 383-84, 387, 180 P.3d 1074 (2008), where a similar misunderstanding about a special sentencing rule led to a plea agreement breach. In *Foster*, the parties assumed probation for a level 7 felony with a C score. But a special firearm rule changed the outcome to presumptive prison. Under this rule, the defendant may be granted probation only if the district court explicitly determines that probation would benefit community safety by encouraging the defendant's rehabilitation and reform. The prosecutor stated the probation recommendation but then weakened it with negative remarks about the crime and the defendant's history, without providing the necessary findings to support a nonprison outcome. See 39 Kan. App. 2d at 381-86. The *Foster* panel held that this breached the agreement by undermining the sentencing recommendation, as the comments would cause an objective person to conclude that probation was unacceptable. 39 Kan. App. 2d at 387, 389-90.

Here, the plea agreement's mistaken assumption about the presumption under Special Rule 9 prompted the State to oppose probation—stressing community risk, probation incompatibility, and treatment history—rather than endorsing the actual statutory presumptive probation. Moreover, the 2(e) clause—"[t]he defendant will be free to argue, which the State will oppose"—is unclear in scope, adding to the ambiguity. Interpreted in Davis' favor, it does not grant the State license to advocate directly against its recommendation that the district court follow "the statutory presumption" by urging prison. See *Urista*, 296 Kan. at 583-84.

This conduct, akin to *Foster's* undercutting, departed from good faith support for the terms and breached the agreement; as a result, Davis was denied due process. See,

5

e.g., *Urista*, 296 Kan. at 594. In practical terms, allowing the State to recommend one outcome while arguing another would reduce confidence in plea negotiations, encouraging defendants to opt for trial instead. Contracts require performance in good faith, and the State's approach did not meet that standard.

*The breach was not harmless.*

The harmless error analysis centers not on Davis' acceptance of the plea agreement's erroneous wording but on whether, beyond a reasonable doubt, the State's breach exerted little or no influence on his choice to plead guilty. See 296 Kan. at 594-95.

Granted, the agreement contained the "believed to be prison" clause, which Davis confirmed during the plea hearing, indicating he proceeded under that mutual misapprehension. Yet because plea bargains resemble contracts, their terms must be interpreted against the State, mandating a recommendation aligned with the true statutory presumption—probation—irrespective of the mistake. 296 Kan. at 583-84; see *Bell*, 65 Kan. App. 2d at 172-73. The breach stemmed from the State's resistance to probation at sentencing, which eroded the key promise that motivated the plea. Such a violation cannot qualify as harmless, since the probation recommendation represented the agreement's primary advantage, eclipsing the value of the dismissed charges. To conclude otherwise would involve guesswork that overlooks how such recommendations often influence plea decisions in practice.

The appropriate remedy for the breach is specific performance, which restores the intended arrangement. *Urista*, 296 Kan. at 595. To preserve impartiality and avoid any taint from the prior proceeding, resentencing before a different judge has routinely been required by our Supreme Court. See 296 Kan. at 595-96 (finding that "[t]he appearance of judicial neutrality will be best served if the new sentencing hearing is conducted by a different judge"); *State v. Peterson*, 296 Kan. 563, 574, 293 P.3d 730 (2013) (holding that

6

resentencing before a different judge is the typical remedy for the State's breach of a plea agreement). And our appellate courts trace this practice's roots back to *Santobello v. New York*, 404 U.S. 257, 263, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), which noted that if specific performance of a plea agreement is required, the petitioner should be resentenced by a different judge. See *State v. McDonald*, 29 Kan. App. 2d 6, 9-11, 26 P.3d 69 (2001). But we share the sentiments of the United States Supreme Court in *Santobello*, emphasizing that remand to a new judge is not done to question the fairness of the sentencing judge, as "the fault [in this situation] rests on the prosecutor, not on the sentencing judge." 404 U.S. at 263. Thus, we vacate the sentence and remand for resentencing before a different judge, directing the State to recommend probation consistent with the plea agreement.

Because we are remanding this to a different judge with instructions to the prosecutor to follow the plea agreement, we need not address Davis' argument regarding the failure to award the jail credit for which he believes he is entitled. Vacating the sentence necessitates a fresh calculation, making review premature. We simply note that jail credit issues are currently governed by our Supreme Court's decisions in *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), and *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025).

For the reasons stated, we vacate Davis' sentence and remand the case for resentencing before a different judge, with instructions that the State comply with the plea agreement by recommending probation.

Vacated and remanded with directions.