NOT DESIGNATED FOR PUBLICATION

No. 118,296

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT F. DWERLKOTTE, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed August 31, 2018. Reversed and remanded with directions.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Another panel of this court granted Robert F. Dwerlkotte, Jr., relief under *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015) (*Dickey I*), and *State v. Dickey*, 305 Kan. 217, 380 P.3d 230 (2018) (*Dickey II*), and remanded the case for resentencing using the proper criminal history score. At resentencing, the district court modified the sequencing of Dwerlkotte's sentences, not only for his challenged sentence that was vacated by this court but also for a sentence that he did not challenge on his prior appeal. The district court also modified the sentencing range on his nonbase sentence from a standard sentence to an aggravated sentence. Dwerlkotte appealed his

1

resentencing and the district court's denial of his motion to reconsider. We reverse and remand for sentencing.

FACTUAL AND PROCEDURAL BACKGROUND

This is Dwerlkotte's sixth appeal arising from his convictions stemming from events in May 2007. Dwerlkotte's sentence that he is currently appealing is a result from the following events:

> "In May 2007, Dwerlkotte broke into his ex-wife's residence and asked her to have sex with him; eventually he exposed his penis to her and sucked on her breasts while he held her down on the bed. She called police when she was able to, but Dwerlkotte eluded them. The State charged him with aggravated burglary, aggravated sexual battery, lewd and lascivious behavior, and fleeing and eluding police." *Dwerlkotte v. State*, No. 105,669, 2011 WL 4906854, at *1 (Kan. App. 2011) (unpublished opinion) (*Dwerlkotte II*).

See *State v. Dwerlkotte*, No. 99,581, 2009 WL 500992, at *1 (Kan. App.), *rev. denied* 289 Kan. 1281 (2009) (*Dwerlkotte I*).

*Dwerlkotte's First Appeal*

> "In August 2007, Dwerlkotte made a plea agreement with the State where he agreed to plead no contest to one count of aggravated burglary and one count of aggravated sexual battery. In exchange, the State agreed to dismiss two other counts; jointly recommend a sentence of 120 months; and not file any motions to have Dwerlkotte declared a persistent sex offender." *Dwerlkotte I*, 2009 WL 500992, at *1.

The State also agreed to dismiss an unrelated criminal case, to recommend concurrent sentences, and to join in a durational departure sentence to a controlling term of 120 months in prison.

2

On September 14, 2007, the district court sentenced Dwerlkotte. He did not object to his criminal history score of A. Dwerlkotte filed a motion for a downward dispositional and/or durational departure. The district court declined to follow the plea agreement and found Dwerlkotte to be a persistent sex offender under K.S.A. 21-4704(j). The district court denied Dwerlkotte's motion for a downward departure and sentenced him to a controlling term of 272 months' imprisonment with 24 months of postrelease supervision.

Dwerlkotte appealed. On February 27, 2009, the Kansas Court of Appeals affirmed his sentence. *Dwerlkotte I*, 2009 WL 500992, at *1, 6. That panel held: (1) it would not review Dwerlkotte's sentence because it was a presumptive guideline sentence; (2) there was no evidence in the record that the State breached the plea agreement; and (3) harmless error occurred when the district court judge failed to tell Dwerlkotte at the plea hearing that his sentence of 136 months would be doubled to 272 months since Dwerlkotte knew of the possible application of the special persistent sex offender rule when he bargained with the State to refrain from seeking its application. 2009 WL 500992, at *5-6.

*Dwerlkotte's Second Appeal*

After Dwerlkotte's sentence was affirmed on appeal, he filed a K.S.A. 60-1507 motion raising essentially the same issues he had raised in his direct appeal. The 60-1507 petition was denied by the district court and Dwerlkotte appealed. On October 14, 2011, another panel of this court affirmed the district court's dismissal of Dwerlkotte's K.S.A. 60-1507 motion. *Dwerlkotte II*, 2011 WL 4906854, at *1, 3.

*Dwerlkotte's Third Appeal*

On October 30, 2012, Dwerlkotte filed a motion to correct illegal sentence in the district court. In this motion, he argued that his sentencing journal entry incorrectly imposed 60 months' postrelease supervision instead of the orally imposed 24 months' postrelease supervision. Dwerlkotte also alleged other sentencing errors had occurred, which required his sentence to be set aside.

The district court held a hearing on this motion on December 7, 2012, and ordered that a nunc pro tunc journal entry be prepared correctly listing Dwerlkotte's postrelease term as 24 months rather than 60 months. The district court denied Dwerlkotte's motion on his other claims. Dwerlkotte appealed.

On April 25, 2014, the Kansas Court of Appeals issued an opinion again upholding Dwerlkotte's sentence. *State v. Dwerlkotte*, No. 109,930, 2014 WL 1707965 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. 1048 (2015) (*Dwerlkotte III*). That panel held that because the district court was statutorily mandated to sentence Dwerlkotte as a persistent sex offender, his sentence was not illegal. 2014 WL 1707965, at *1-3.

*Dwerlkotte's Fourth Appeal*

On April 24, 2015, the State filed a motion to correct illegal sentence, arguing that on the date of Dwerlkotte's offense and on the date of his sentencing K.S.A. 22-3717(d)(1)(G) and (d)(2)(I) required the imposition of lifetime postrelease supervision for the offense of which he was convicted.

Dwerlkotte responded by filing a motion for postrelease supervision departure findings. He argued that K.S.A. 22-3717(d)(1)(D)(i)-(iii) set out departure language

4

regarding postrelease supervision that authorized a district court judge to find substantial and compelling reasons to impose a 60-month postrelease supervision period, rather than lifetime postrelease. In addition, he argued that lifetime postrelease supervision is unconstitutional cruel and unusual punishment under *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978).

On July 29, 2015, Dwerlkotte filed a second motion to correct illegal sentence pro se. Relying on *State v. Dickey*, 50 Kan. App. 2d 468, 329 P.3d 1230 (2014), in this motion he challenged the classification of three pre-1993 Kansas burglary convictions as person felonies in the calculation of his criminal history score.

On November 6, 2015, the district court held a hearing on the State's motion to correct illegal sentence. At this hearing, Dwerlkotte argued the imposition of lifetime postrelease supervision amounted to unconstitutional cruel and unusual punishment under the *Freeman* factors. The district court found his argument meritless and ordered Dwerlkotte to be subject to lifetime postrelease supervision for his conviction of aggravated sexual battery. The district court did not make a ruling on Dwerlkotte's motion to correct illegal sentence at this hearing. Dwerlkotte appealed the district court's imposition of lifetime postrelease supervision.

On April 28, 2017, the Kansas Court of Appeals concluded that Dwerlkotte's lifetime postrelease supervision was not cruel and unusual punishment and affirmed the district court. *State v. Dwerlkotte*, No. 115,625, 2017 WL 1535212, at *1-4 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. 1323 (2017) (*Dwerlkotte IV*).

*Dwerlkotte's Fifth Appeal*

Before the filing of *Dwerlkotte IV*, on January 29, 2016, Dwerlkotte filed a pro se motion for declaration judgment based on *Dickey I*, claiming that the Kansas Supreme

5

Court's opinion in *Dickey I* was dispositive of his second motion to correct illegal sentence filed on July 29, 2015. Dwerlkotte filed a third motion to correct illegal sentence essentially to this same effect on April 12, 2016.

On April 18, 2016, the district court held a hearing on Dwerlkotte's second motion to correct illegal sentence. The district court ultimately denied Dwerlkotte's motion and Dwerlkotte appealed.

On April 28, 2017—the same date of filing as *Dwerlkotte IV*—the Kansas Court of Appeals vacated Dwerlkotte's sentence. *State v. Dwerlkotte*, No. 116,231, 2017 WL 1535230, at *1 (Kan. App. 2017) (unpublished opinion) (*Dwerlkotte V*). That panel held that Dwerlkotte's pre-Kansas Sentencing Guidelines Act (KSGA) Kansas burglary convictions were improperly classified as person felonies, vacated Dwerlkotte's sentence, and remanded the case for the correct calculation of his criminal history score and for resentencing accordingly. 2017 WL 1535230, at *8.

*Dwerlkotte's Current Appeal*

The district court held a resentencing hearing on July 19, 2017. A new presentence investigation (PSI) report was prepared properly classifying Dwerlkotte's pre-KSGA burglary convictions, reducing his criminal history score from A to E. At this resentencing, the following exchange occurred:

> "THE COURT: If you're not aware of a reason legal or otherwise why sentence should not be pronounced, recommendation.
> "[THE STATE]: Well, judge, this always brings issues. Because at the time of his sentencing on August the 17th of 2007 there had been a plea agreement reached with the defendant whereby the [S]tate would recommend concurrent sentencing. The charges of lewd and lascivious behavior and the felony flee and elude were dismissed. An unrelated criminal case was also dismissed. The [S]tate indicated it would not file a

6

motion to declare the defendant to be a persistent sex offender and the [S]tate would agree to a controlling sentence with the defendant of 120 months in prison. That was the terms of the plea agreement.

"I think that has been violated in so many different ways at this point. I think the defendant has done that. I'm not sure I'm still bound by it. I'd ask the court to give the maximum time the court thinks is appropriate.

"THE COURT: [Defense], if you're not aware of a reason legal or otherwise why sentence should not be pronounced, recommendation.

"[THE DEFENSE]: Judge, I'm just asking the courts to impose I believe the, I would ask for concurrent sentences, obviously, and not to impose any special rules other than the ones that apply to it and find that he has served his sentence and release him, Your Honor.

"THE COURT: Mr. Dwerlkotte, at this time you may make any statements to me that you wish. You may offer any evidence and testimony in mitigation of sentence. You are not required to do so, but you certainly may.

"THE DEFENDANT: The only thing I ask for, Your Honor, is for my, for the sentence, the charges to be concurrent, concurrently ran according to the first agreement and that the [S]tate's recommendation be denied.

"THE COURT: Defendant, having been convicted of aggravated sexual battery, it is the sentence and order of the court the defendant be taken into custody by the Sheriff of Reno County and delivered to the custody of the Secretary of Corrections to serve a term of 51 months, the aggravated sentence.

"On Count Two the defendant is sentenced to the custody of the Secretary of Corrections to serve a term of 34 months, the aggravated sentence. Those two sentences will run consecutive to each other for a controlling term of 85 months in the custody of the Secretary of Corrections, and pursuant to the persistent sex offender statute those numbers will be doubled with the defendant's final sentence being 170 months in the custody of the Secretary of Corrections.

"The defendant will get credit for time served. There is a lifetime postrelease.
. . . .

"[THE DEFENSE]: Your Honor, then in addition to that, just twice [the] number should be―

"THE COURT: I understand what I sentenced him to, Mr. Mueller. [Defense counsel.] You're going to file a notice of appeal and you may file an appeal on my

7

sentence. I have sentenced him to 170 months in the custody of the Secretary of Corrections which I believe is allowed under the statute. I'm not doing it based upon the recommendation of the [S]tate, although I find the [S]tate cannot abide by their plea agreement. But even if they were to abide by the plea agreement the court's sentence has nothing to do with that. It has to do with the defendant's criminal history, the facts committed in this crime, and the view that I consider Mr. Dwerlkotte to be a very dangerous individual still at this time as apparently Larned State Security—or the psychiatrists in the Sexual Predator Unit. But I'm not basing it on that; I'm basing it on his criminal history, what I view the dangerousness of Mr. Dwerlkotte to the community at this point.

"We will proceed with the [sixth] appeal on Mr. Dwerlkotte's sentencing, it would appear. You'll file a notice of appeal, Mr. Mueller. We'll appoint the appellate defender. We will proceed."

This resentencing reduced his controlling sentence from 272 months to 170 months' imprisonment. However, in Dwerlkotte's original sentencing his sentences for his two convictions were ordered to run concurrent to each other—at resentencing his sentences for his convictions were ordered to run consecutive to each other.

Dwerlkotte now timely appeals his sentence.

On appeal, Dwerlkotte raises three arguments: (1) the district court improperly modified his sentence at resentencing; (2) the State breached the plea agreement at resentencing; and (3) the district court engaged in vindictive sentencing.

DID THE DISTRICT COURT EXCEED THE SCOPE
OF THE COURT OF APPEALS' REMAND AT RESENTENCING?

First, Dwerlkotte argues that the district court erred in resentencing him. Specifically, he argues that the district court erred in imposing the aggravated sentence for both counts, running those sentences consecutive to each other, and then doubling that

8

sentence under K.S.A. 21-4704(j)(1), which allows a district court to double an offender's sentence if he or she is classified as a persistent sex offender. Dwerlkotte claims that the district court violated the mandate rule because it did not have the authority to modify his nonbase sentence. To resolve Dwerlkotte's argument, it must be determined if the district court exceeded the scope of this court's mandate and, if so, if the district court was without the legal authority to modify Dwerlkotte's nonbase sentence.

"Whether a district court has complied with the mandate of an appellate court is a question of law over which we exercise plenary review." *State v. Tafoya*, 304 Kan. 663, 666, 372 P.3d 1247 (2016). Known as the "mandate rule," K.S.A. 60-2106(c) provides:

> "When . . . a decision of an appellate court becomes final, such court shall promptly cause to be transmitted to the clerk of the district court its mandate containing such directions as are appropriate under the decision. A copy of the opinion of the court shall accompany and be a part of the mandate. . . . Such mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."

As stated by the Kansas Supreme Court:

> "A sentence is effective when pronounced from the bench. A sentence is the judgment of the court that formally declares to the accused the legal consequences of his or her conviction. The final judgment in a criminal case is the sentence. Once sentence is pronounced and judgment entered, the district court loses jurisdiction over a criminal case except to correct arithmetic or clerical errors. [Citations omitted.]" *Tafoya*, 304 Kan. at 666-67.

Finally, "the substance of the Court of Appeals ruling controls over the form its ruling takes. 'The law of this state is realistic. Substance prevails over form.' [Citations omitted.]" 304 Kan. at 670.

9

In *Dwerlkotte V*, 2017 WL 1535230, at *8, that panel remanded the case, holding:

> "The error here raised Dwerlkotte's criminal history score to an A. Dwerlkotte's presentence investigation report reflected four person felonies and four nonperson misdemeanors. Three of the person felonies were the disputed burglary convictions. Dwerlkotte's criminal history would drop significantly if the burglary convictions were scored as nonperson felonies rather than person felonies. K.S.A. 2006 Supp. 21-4704.
> "We vacate Dwerlkotte's sentence and remand for resentencing with directions to score the preguidline burglary convictions as nonperson felonies."

In that case Dwerlkotte only challenged his sentence to which the incorrect criminal history score of A was applied. No challenge was made to the conviction to which the district court applied the criminal history score of I. See *Dwerlkotte V*, 2017 WL 1535230, at *8. Simply stated, there was never a challenge to Dwerlkotte's nonbase conviction during his prior appeal. He only challenged the sentence to which the incorrect criminal history score was applied. Therefore, the substance of the remand was to vacate Dwerlkotte's base sentence. The district court went outside the scope of the remand in modifying the nonbase sentence. See *Tafoya*, 304 Kan. at 667; see also *State v. Crutchfield*, No. 118,021, 2018 WL 2460267, at *4-7 (Kan. App. 2018) (unpublished opinion) (holding that when this court remands for recalculation of criminal history score and resentencing accordingly, only base sentences to which the incorrect criminal history was applied are vacated and nonbase sentences remain intact).

Because the district court exceeded the scope of the remand, it must be determined if the district court was without the legal authority to modify Dwerlkotte's nonbase sentence. The State argues that the KSGA permits the resentencing on all convictions upon remand. This argument fails.

> "[A] district court has no authority to modify unchallenged sentences following a remand by an appellate court except when modification is needed to correct arithmetic or clerical

10

errors. The only other exception occurs when a sentence is determined to be illegal within the meaning of K.S.A. 22-3504, which may happen at any time. Thus, on remand from a higher court, absent narrow exceptions, a district court's jurisdiction to resentence or otherwise deviate from an already pronounced sentence is limited to the express instructions contained in the higher court's mandate. [Citations omitted.]" *Tafoya*, 304 Kan. at 667.

The Kansas Supreme Court has "repeatedly held that the [KSGA] governs the jurisdiction of courts to impose sentences. . . . [I]n enacting the KSGA, the legislature intended to restrict the authority of district courts to modify sentences once the sentences have been pronounced from the bench." *State v. Guder*, 293 Kan. 763, 763, 267 P.3d 751 (2012).

Once the district court has pronounced the sentence from the bench it may not modify a sentence unless it has explicit statutory authority to do so. 293 Kan. 763, Syl. ¶ 2. The KSGA "does not grant district courts the authority to modify sentences following remand unless the primary *conviction* was reversed on appeal." (Emphasis added.) 293 Kan. 763, Syl. ¶ 3.

In *Guder*, the district court modified Guder's sentence for manufacturing a controlled substance as it was directed to do by this court. However, it also "modified the [possessing drug] paraphernalia sentence from concurrent to consecutive." 293 Kan. at 765. In reviewing the district court's actions, our Supreme Court held:

"When it enacted the KSGA, our legislature explicitly addressed remands following reversal. K.S.A. 21-4720(b)(5) [now codified as K.S.A. 2017 Supp. 21-6819(b)(5)] provides that, in the event that a *conviction* of the primary crime is reversed on appeal, the sentencing court is to follow all of the KSGA provisions concerning sentencing in multiple conviction cases.
"Nothing in the statutory scheme, however, allows resentencing on other convictions following the vacating of a *sentence* on appeal. It is telling that the legislature

11

expressly set out the authority of district courts to resentence on remand, without giving them authority to resentence on other convictions when only the *sentence* for the primary conviction is vacated. It is also telling that, in repealing the old statute and replacing it with a new version in 2010, the legislature retained the limitation to remands when the primary *conviction* is reversed. See L. 2010, ch. 136, sec. 300(b)(5). We will not add words to the statute that would provide jurisdiction to resentence on other counts when only the sentence on the primary conviction is vacated. This court ascertains the legislature's intent through the statutory language it uses, and it will not read a statute to add something not readily found in it.

"Although Guder's sentence was vacated, his conviction was not reversed. We find no language from the legislature allowing a district court to modify any of the sentences that were not vacated on appeal.

"We therefore vacate the modification of Guder's sentence that rendered his sentence for the paraphernalia conviction consecutive to the manufacturing sentence, and we reverse the decision of the Court of Appeals affirming the district court. [Citations omitted.]" 293 Kan. at 766-67.

Recently, the Kansas Supreme Court held: "When multiconviction cases are remanded for resentencing, the [KSGA] prohibits district courts from modifying sentences that have not been vacated by the appellate court. An exception exists when the district court must alter such a sentence as a matter of law to avoid an illegal sentence." *State v. Warren*, 307 Kan. 609, Syl. ¶ 1, 412 P.3d 993 (2018).

Here, Dwerlkotte's primary conviction was not reversed on appeal. Accordingly, the KSGA did not permit the district court to modify his sentence that was not vacated by this court. No modification was needed to avoid an illegal sentence or to correct arithmetic or clerical errors. Our court only vacated Dwerlkotte's base count to which the incorrect criminal history score was applied, and Dwerlkotte made no challenge to any other sentences on appeal. The district court exceeded the scope of this court's mandate and was without the legal authority to modify Dwerlkotte's nonvacated sentence.

12

In practical application, the district court incorrectly ordered Dwerlkotte's sentences to run consecutive to each other because they were originally ordered to run concurrent. Further, the district court was not permitted to order the aggravated grid range sentence because this sentence was not vacated on appeal. Finally, K.S.A. 21-4704(j)(1) permits the doubling of an offender's sentence if the offender is a persistent sex offender. Dwerlkotte's original base sentence was the aggravated grid sentence. The district court was correct in again imposing the aggravated grid sentence for Dwerlkotte's base sentence using his correct criminal history score of E. This equated to a 51-month term of imprisonment. Under K.S.A. 21-4704(j)(1), the district court may double this sentence when the offender is a persistent sex offender. The result is that Dwerlkotte's maximum sentence was 102 months' imprisonment. The district court was not permitted under the KSGA to alter the originally imposed sequencing of the sentences or the grid range severity level of the nonvacated sentence. The sentence of 170 months' imprisonment was statutorily impermissible.

Additionally, at Dwerlkotte's original sentencing, the district court determined Dwerlkotte's base conviction to be aggravated burglary, a severity level 5 person felony, and the district court designated his aggravated sexual battery conviction, also a severity level 5 person felony, as his nonbase conviction. However, at resentencing his base and nonbase convictions were transposed. Although this is of no consequence in the above analysis because these crimes carry the same severity level of a level 5 person felony, the district court must correct this error on remand for consistency. K.S.A. 21-3518(b); K.S.A. 21-3716.

This first issue is determinative of the outcome of Dwerlkotte's appeal. The case must be remanded for resentencing. However, the issue as to whether the State violated the plea agreement must be addressed to insure that it does not muddy the waters at a resentencing. If further appeals can be avoided by resolving this issue now, it is wise to do so.

13

DID THE STATE BREACH THE PLEA AGREEMENT AT RESENTENCING?

Dwerlkotte argues that the State breached the plea agreement when it requested that he be given the maximum sentence at resentencing. The State responds that, first, Dwerlkotte breached the plea agreement first by not agreeing with the sentence set out in the plea agreement, and, second, that he failed to preserve the issue for appellate review by failing to object at resentencing.

Whether the State breached its plea agreement with a defendant is a question of law over which an appellate court exercises unlimited review. *State v. Urista*, 296 Kan. 576, 582-83, 293 P.3d 738 (2013). In *Urista*, the Kansas Supreme Court discussed the law surrounding the State's obligation to follow the plea agreement:

> "'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process. See *State v. Wills*, 244 Kan. 62, 67-68, 765 P.2d 1114 (1988); *State v. Foster*, 39 Kan. App. 2d 380, 390, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008); *State v. McDonald*, 29 Kan. App. 2d 6, Syl. ¶ 1, 26 P.3d 69 (2001). This is true even if the record indicates that the district court's sentencing decision was not influenced by the State's actions at sentencing. *Foster*, 39 Kan. App. 2d at 390.
> "'[A] plea agreement is generally subject to contract principles' and, accordingly, the 'application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances.' *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 (2010); see also *State v. Boley*, 279 Kan. 989, 992-93, 113 P.3d 248 (2005) (noting the same). Kansas courts have recognized that contracts, with the exception of at-will employment agreements, contain implied covenants of good faith and fair dealing. *Estate of Draper v. Bank of America*, 288 Kan. 510, Syl. ¶ 13, 205 P.3d 698 (2009); see also *Foster*, 39 Kan. App. 2d at 388-89, (applying the implied covenants of good faith and fair dealing to a plea agreement).

14

Furthermore, '[t]he law implies that contractual provisions requiring the exercise of judgment or discretion will be honestly exercised and faithfully performed.' *Lessley v. Hardage*, 240 Kan. 72, Syl. ¶ 7, 727 P.2d 440 (1986). Thus, parties to a plea agreement must act fairly and in good faith in carrying out the promises they have made.

"Obviously, the State can breach a plea agreement by explicitly failing to fulfill an agreed-upon promise, such as failing to make a sentencing recommendation to the district court that it promised it would make. See *Santobello*, 404 U.S. at 257-59 (State violated plea agreement by recommending a 1-year sentence at sentencing; in the plea agreement, State agreed not to make any sentencing recommendation); *McDonald*, 29 Kan. App. 2d at 10 (State violated plea agreement by telling district court at sentencing that State did not oppose granting defendant's downward dispositional departure motion but reminded court of the factual findings it would have to make in order to grant motion; in plea agreement, State promised to recommend 24 months' probation consecutive to the defendant sentence for a parole violation). *Cf. United States v. Benchimol*, 471 U.S. 453, 455-56, 105 S. Ct. 2103, 85 L. Ed. 2d 462 (1985) (government complied with plea agreement by making sentencing recommendation it promised it would make at sentencing and nothing more; plea agreement did not require the prosecutor to express enthusiasm for the recommendation or to explain the reasons behind the recommendation at sentencing); *State v. Hill*, 247 Kan. 377, 385-86, 799 P.2d 997 (1990) (plea agreement required State to recommend controlling term of two consecutive life sentences; at sentencing, prosecutor merely informed district court that PSI report contained parties' recommended sentence; this court concluded that prosecutor's actions satisfied requirement to make sentencing recommendation because same judge presided over plea hearing and sentencing and was explicitly informed of recommended sentence at plea hearing; furthermore, judge had copy of PSI report which contained recommended sentence and judge made statements at sentencing which indicated he was aware of recommended sentence)." *Urista*, 296 Kan. at 583-84

Here, at resentencing, the following exchange occurred:

"[THE COURT:]  The defendant was originally convicted and sentenced on counts of aggravated sexual battery and aggravated burglary back in 2007. The defendant, over the course of the proceedings, appealed this sentence [on] three separate

15

occasions which were affirmed. On his fourth appeal he was successful. The case was remanded to sentence, resentence the defendant which we are going to do today.

"Do both parties acknowledge receipt of the updated PSI and are there any objections to the criminal history score of E?

"[THE STATE]: Well, I made my objections. I still believe that when you put in the language of the complaint that it was a dwelling that was entered in the burglary it's a person felony, but the appellate courts disagree with me. So I still object to it, though.

"[THE DEFENSE]: Judge, we've reviewed and we have no objection.

"THE COURT: The court will find the primary offense to be aggravated sexual battery with a criminal history score of E.

"Are there any motions for a departure?

"[THE DEFENSE]: No, Your Honor. Judge, just doing the math, he has done 123 months at this point. Twice the top number would be 102 so I didn't feel it was necessary to file any motion because he's served his sentence, Your Honor.

"THE COURT: Mr. Schroeder, are there any victims present who wish to make a statement?

"[THE STATE]: Not that I'm aware of, judge.

"THE COURT: If you're not aware of a reason legal or otherwise why sentence should not be pronounced, recommendation.

"[THE STATE]: Well, judge, this always brings issues. Because at the time of his sentencing on August the 17th of 2007 there had been a plea agreement reached with the defendant whereby the [S]tate would recommend concurrent sentencing. The charges of lewd and lascivious behavior and the felony flee and elude were dismissed. An unrelated criminal case was also dismissed. The [S]tate indicated it would not file a motion to declare the defendant to be a persistent sex offender and the [S]tate would agree to a controlling sentence with the defendant of 120 months in prison. That was the terms of the plea agreement.

"I think that has been violated in so many different ways at this point. I think the defendant has done that. I'm not sure I'm still bound by it. I'd ask the court to give the maximum time the court thinks is appropriate.

"THE COURT: [Defense counsel], if you're not aware of a reason legal or otherwise why sentence should not be pronounced, recommendation.

"[THE DEFENSE]: Judge, I'm just asking the courts to impose I believe the, I would ask for concurrent sentences, obviously, and not to impose any special rules other

16

than the ones that apply to it and find that he has served his sentence and release him, Your Honor."

The State argues that Dwerlkotte failed to preserve this issue for appeal because he failed to object before the district court. The Kansas Supreme Court addressed the necessity of an objection to the State's breach of a plea agreement in *State v. Jones*, 302 Kan. 111, 117-18, 351 P.3d 1228 (2015), stating:

"Kansas follows a common-law rule that 'constitutional grounds for reversal asserted for the first time on appeal are not properly preserved for appellate review' subject to three exceptions. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007).

"A new legal theory may be asserted for the first time on appeal if: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite relying on the wrong ground or assigning a wrong reason for its decision. *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010); *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967) (citing 5 Am. Jur. 2d, Appeal and Error §§ 549, 727, pp. 34, 170-71).

"This court just held in a case involving an alleged breach of a plea agreement that Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) requires an appellant raising a constitutional issue for the first time on appeal to affirmatively invoke and argue an exception to the general rule that such claims may not be raised for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, Syl., 350 P.3d 1068 (2015). In that case, Godfrey's appellate brief made no reference to issue preservation and gave no explanation why his claim was properly before the court for the first time on appeal as required by Rule 6.02(a)(5). The State raised lack of preservation as an objection in its response brief, and Godfrey again failed to proffer a reason why the appellate court should consider the issue in a reply. Based on our admonition in *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), warning future litigants about compliance with Rule 6.02(a)(5), we declined to address the issue. *Godfrey*, 301 Kan. at 1043-44."

Although there is no obvious objection on the record, a review of the resentencing transcript indicates that Dwerlkotte's counsel attempted to lodge an objection, but the district court stopped Dwerlkotte's counsel's attempt and any such discussion. The following exchange occurred:

> "[THE DEFENSE]: Your Honor, then in addition to that, just twice number should be—
>
> "THE COURT: I understand what I sentenced him to, Mr. Mueller [Defense counsel]. You're going to file a notice of appeal and you may file an appeal on my sentence. I have sentenced him to 170 months in the custody of the Secretary of Corrections which I believe is allowed under the statute. I'm not doing it based upon the recommendation of the [S]tate, although I find the [S]tate cannot abide by their plea agreement. But even if they were to abide by the plea agreement the court's sentence has nothing to do with that. It has to do with the defendant's criminal history, the facts committed in this crime, and the view that I consider Mr. Dwerlkotte to be a very dangerous individual still at this time as apparently Larned State Security—or the psychiatrists in the Sexual Predator Unit. But I'm not basing it on that; I'm basing it on his criminal history, what I view the dangerousness of Mr. Dwerlkotte to the community at this point.
>
> "We will proceed with the [sixth] appeal on Mr. Dwerlkotte's sentencing, it would appear. You'll file a notice of appeal, Mr. Mueller. We'll appoint the appellate defender. We will proceed."

Moreover, even if this attempt to object is not enough to satisfy the requirement that Dwerlkotte objected to the State's breach of its plea agreement, when an appellant specifically evokes an exception to this rule, our court may consider the issue on appeal. See *Jones*, 302 Kan. at 117-18. Here, Dwerlkotte specifically argues in his brief that consideration of this issue is necessary to prevent the denial of his fundamental right to due process. Therefore, this issue is properly before this court.

In Dwerlkotte's case, the State explicitly failed to fulfill an agreed-upon promise in the plea agreement by failing to recommend to the district court that Dwerlkotte's sentences run concurrent to each other. In fact, the State explicitly requested the opposite and recommended that the district court impose the maximum sentence. This is obviously a breach of the plea agreement and, thus, an infringement on Dwerlkotte's due process rights. See *State v. Wills*, 244 Kan. 62, 67-68, 765 P.2d 1114 (1988); see also *Santobello v. New York*, 404 U.S. 257, 257-59, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) (State violated plea agreement by recommending a 1-year sentence at sentencing; in the plea agreement, State agreed not to make any sentencing recommendation).

The State also argues that it was permitted to breach the plea agreement because Dwerlkotte breached the plea agreement first. The State claims that Dwerlkotte "violated [the agreement] in so many ways," but does not offer any persuasive evidence of this claim. There was nothing in the plea agreement that prevented Dwerlkotte from appealing his sentence or his criminal history score.

Because the State's breach of the plea agreement was a violation of Dwerlkotte's due process rights, this case is remanded to the district court for resentencing consistent with this finding.

### DID THE DISTRICT COURT VINDICTIVELY RESENTENCE DWERLKOTTE?

Finally, Dwerlkotte argues that the district court vindictively resentenced him. The State argues in response that Dwerlkotte has failed to meet his burden in showing the district court engaged in vindictive sentencing.

> "A criminal sentence that is within statutory limits will not be disturbed on appeal absent a showing of abuse of discretion or vindictiveness on the part of the sentencing court."

19

"Where resentencing results in seemingly unjustified enhancement of sentence, there is a presumption that the increased sentence resulted from vindictiveness, which the sentencing judge or prosecutor must rebut. Where such presumption of vindictiveness does not apply, the defendant must affirmatively prove actual vindictiveness in order to prevail." *State v. Cooper*, 275 Kan. 823, Syl. ¶¶ 5-6, 69 P.3d 559 (2003).

Here, Dwerlkotte's sentence was not increased upon resentencing. His sentence was decreased from 270 months' imprisonment to 170 months' imprisonment. Thus, there is no presumption that his new sentence was vindictive; Dwerlkotte must therefore affirmatively prove actual vindictiveness. See *Cooper*, 275 Kan. at 828-29 (holding where defendant's sentence was not increased upon resentencing there is no presumption of vindictiveness).

Dwerlkotte fails to prove actual vindictiveness. He argues that because the district court commented "that a detainer had been filed by the Department of Corrections under the Sexually Violent Predator Civil Commitment Act" that the sentence was vindictive. However, the district judge explicitly said it was not basing Dwerlkotte's new sentence on the detainer; rather, it was basing the new sentence on "his criminal history, what I view the dangerousness of Mr. Dwerlkotte to the community at this point." There is no actual vindictiveness shown, and the district court, therefore, did not vindictively resentence Dwerlkotte.

Reversed and remanded with directions.