IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 104,516

STATE OF KANSAS,
*Appellee*,

v.

TIFFANY A. JONES,
*Appellant*.

SYLLABUS BY THE COURT

1.

A criminal defendant is denied due process if the State fails to fulfill a promise in that defendant's plea agreement.

2.

An allegation the State breached a plea agreement presents a question of law over which an appellate court exercises unlimited review.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 11, 2013. Appeal from Sedgwick District Court; JOSEPH BRIBIESCA, judge. Opinion filed June 12, 2015. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, sentence vacated, and case remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Theresa L. Barr*, of the same office, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, former district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

1

The opinion of the court was delivered by

BILES, J.: Tiffany A. Jones claims the prosecutor in her aggravated robbery case breached a plea agreement obligating the State to join in her request for probation. A divided Court of Appeals panel has twice held the prosecutor did not breach the agreement. *State v. Jones*, No. 104,516, 2011 WL 6309613 (Kan. App. 2011) (unpublished opinion) (*Jones I*), *summarily reversed and remanded for reconsideration* on May 20, 2013; *State v. Jones*, No. 104,516, 2013 WL 5610136 (Kan. App. 2013) (unpublished opinion) (*Jones II*), *review granted* August 28, 2014. A majority of this court agrees with Jones and remands her case to the district court for resentencing. We hold the State's breach under the circumstances was one of omission—a failure to ensure the sentencing court was aware of the probation recommendation the State obligated itself to make.

## FACTUAL AND PROCEDURAL BACKGROUND

Jones was charged with a 2008 aggravated robbery in violation of K.S.A. 21-3427. She agreed to plead guilty as charged. In exchange, the prosecutor agreed to "join in [Jones'] request for a downward dispositional departure to probation and [to] recommend supervision by Community Corrections Field Services" if Jones' criminal history score was a G or lower. Otherwise, the prosecutor would recommend the sentencing court impose the high number in the Kansas sentencing guidelines grid box.

Under the plea agreement, the "agreed joint basis for dispositional departure" would include

> "the fact that [Jones] was not the sole actor in this case; the joint request of the parties;
> that appropriate treatment programs exist and are available that are more likely to be

2

more effective in reducing offender recidivism, including substance abuse treatment, anger management, and mental health services; and that a non-prison sanction will serve community safety interests by promoting offender reformation."

The plea agreement further stated that if her criminal history score was G or lower, Jones was "not free to argue for alternative dispositions, but may cite additional bases in support of a departure." The agreement did not address what the State would do if Jones argued an additional reason to depart.

Jones pleaded guilty to aggravated robbery as agreed. During the plea hearing, the district court indicated it had a copy of the plea agreement and the prosecutor accurately summarized its terms for the record. After the hearing, the agreement was filed with the district court as an unidentified attachment to a document entitled "Defendant's Acknowledgement of Rights and Entry of Plea."

Jones' criminal history score was determined to be I, which triggered the State's obligation to join in her request for probation. The presentence investigation PSI report did not reference the plea agreement's terms.

At the sentencing hearing, a different judge presided and the State was represented by a different prosecutor. The judge stated he had read Jones' departure motion and then heard argument. The judge made no explicit reference to the plea agreement's terms, and it is not clear from the appellate record whether the judge had the plea agreement before him at the time of sentencing.

Defense counsel informed the sentencing court there was a plea agreement and recited some of the facts surrounding the aggravated robbery. Defense counsel then indicated Jones had contacted correctional counseling and arranged to participate in an

anger management program. Counsel then stated: "[A]t this point we believe that, not only I think the [S]tate is in agreement, that there are substantial and compelling reasons why probation should be granted in this case."

In support of departure, defense counsel recited the following: (1) community based resources would promote offender reaffirmation; (2) Jones was not the sole actor; (3) there were no weapons used; (4) the victim suffered "only minor injuries," noting the victim was not hospitalized; and (5) other factors cited in the written motion. The first and second factors were identified as having the State's support. The third and fourth were not part of the agreed-upon rationale, but the agreement did permit their addition. Defense counsel did not reference the last agreed-upon rationale, *i.e.*, a nonprison sentence would serve community safety interests through offender reformation. The written departure motion was not included in the appellate record.

The sentencing judge asked the prosecutor whether the State had anything for the record. In responding, the prosecutor did not confirm defense counsel's statement that the State joined in the departure motion or otherwise inform the court that the State recommended departure to probation. The prosecutor initially stated, "Judge . . . I don't have a recommendation outside the plea agreement," then immediately moved to have the court acknowledge the victim who wanted to speak. The following colloquy occurred next:

"THE COURT: Well, just not yet.

"[Prosecutor]: Okay.

"THE COURT: You don't have anything to say?

"[Prosecutor]: Not really, Judge.

4

"Her criminal history came back as an I.

"In looking at the plea agreement, Judge, they did anticipate that she could be possibly a G or lower. Frankly, you know, the word, there were injuries, there were photographs that would say [the victim] did not have injuries, I think, is a misstatement. But I'm sort of bound by the plea agreement, Judge, when she is a G or lower, to follow the plea agreement that was negotiated in this case.

"I don't believe there was restitution. I believe it was all made by settlement. So, as far as that goes, Judge, about the only thing I could add to statements, I could show you injuries if that would be helpful to the court. So, given that, Judge, I have nothing to add."

The judge reviewed photographs of the victim's injuries, indicating that defense counsel and the State disagreed about the extent of the injuries.

The sentencing judge denied Jones' dispositional departure motion, citing the nature of the crime, Jones' character and condition, public safety, and the crime's seriousness. The judge sentenced Jones to 59 months' imprisonment, the mid-range term in the applicable grid box, and 36 months' postrelease supervision. Jones appealed to the Court of Appeals.

Before the panel, Jones argued the prosecutor violated the plea agreement by not joining in her downward departure motion. She further argued the State's comments to the district court only paid lip service to the plea agreement, which specifically required the State to actively join her request for probation and recommend supervision by Community Corrections Field Services.

5

A divided Court of Appeals panel held the prosecutor did not violate the plea agreement. *Jones I*, 2011 WL 6309613, at *4. The majority described the prosecutor's comments as "close to recommending nothing," but it held the prosecutor's comments that there was no recommendation "'outside [of] the plea agreement'" and "'I'm sort of bound by the plea agreement . . . to follow the plea agreement that was negotiated in this case'" were adequate to fulfill the agreement's requirement for the State to recommend probation. 2011 WL 6309613, at *4. Judge G. Gordon Atcheson disagreed. He would have held that "the prosecutor had an obligation to articulate the State's position in support of the agreement generally and of its component parts," and he further characterized the prosecutor's comments as inadequate "'lip service'" because it was a message "of unspoken disdain," not "good-faith support." 2011 WL 6309613, at *7 (Atcheson, J., dissenting).

Jones petitioned for this court's review, which we granted. We summarily reversed and remanded for reconsideration in light of two recent plea-agreement-breach decisions this court had decided after the *Jones I* panel's decision. See *State v. Peterson*, 296 Kan. 563, 293 P.3d 730 (2013); *State v. Urista*, 296 Kan. 576, 293 P.3d 738 (2013).

On remand, Jones did not file a supplemental brief, but the State did. The same panel reconvened, and again the same majority determined the prosecutor did not violate the plea agreement. The majority held: "[T]he [sentencing] court was aware of the parties' recommendations in the agreement and that the State had agreed to a departure and the grounds to support a departure." *Jones II*, 2013 WL 5610136, at *5. The majority concluded the prosecutor sufficiently fulfilled the State's promise to recommend the agreed-upon sentence and join in Jones' request for a downward dispositional departure. It further noted the prosecutor did not "make any comments aimed at defeating or making an end-run around Jones' departure motion." 2013 WL 5610136, at *5.

6

Judge Atcheson again dissented. He disputed whether the record established that the sentencing court was aware of the State's recommendation because: (1) It was not included in the PSI report; (2) the defendant's departure motion was not in the appellate record allowing appellate review; (3) the plea agreement itself was not entered as a distinct document in the district court's file; and (4) the district court did not make a direct reference to the agreement's terms. 2013 WL 5610136, at *9 (Atcheson, J., dissenting). He would have held the prosecutor breached the agreement by failing to affirmatively join the departure motion because the prosecutor only generally acknowledged the plea agreement existed. 2013 WL 5610136, at *8. Judge Atcheson said the State's endorsement of Jones' probation request, including the circumstances supporting the departure sentence, was required. 2013 WL 5610136, at *10.

Jones again petitioned for this court's review, which we again granted. Our jurisdiction exists under K.S.A. 20-3018(b); see also K.S.A. 60-2101(b) (review of Court of Appeals decisions upon timely petition for review).

## THE STATE BREACHED THE PLEA AGREEMENT

This court recently recited the general principles governing an allegation that the State had breached a plea agreement in two cases decided the same day, *Peterson*, 296 Kan. at 567, and *Urista*, 296 Kan. at 583.

"'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Urista*, 296 Kan. at 583 (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 [1971]). A defendant is denied due process if the State fails to fulfill a promise in the plea agreement. 296 Kan. at 583; *State v. Wills*,

244 Kan. 62, 65-66, 765 P.2d 1114 (1988) (quoting *Mabry v. Johnson*, 467 U.S. 504, 507-09, 104 S. Ct. 2543, 81 L. Ed. 2d 437 [1984]).

"'[A]pplication of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances.'" *Peterson*, 296 Kan. at 567 (quoting *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 [2010]). And "[a]n allegation that the State breached a plea agreement presents a question of law over which this court exercises unlimited review." *Peterson*, 296 Kan. at 567.

There are three typical plea agreement promises prosecutors make that govern their conduct at sentencing: "(1) [A] promise to recommend a mutually agreed upon sentence; (2) a promise to take no position on a portion or specific aspect of the sentence, *e.g.*, whether consecutive or concurrent sentences should be imposed; and (3) a promise to remain silent at sentencing." 296 Kan. at 569. Here, we are dealing with the first type—the State's promise to join in a recommended sentence.

There are at least two ways for the State to breach a promise to make a recommendation: (1) It can fail to make a sentencing recommendation to the district court that it promised it would make; or (2) it can make the recommendation but still breach the agreement by making additional comments at sentencing that effectively undermine its recommendation. *Urista*, 296 Kan. 576, Syl. ¶ 4. In her petition for review, Jones effectively makes both claims.

8

*Preservation*

Notably, Jones did not contemporaneously object during sentencing or allege at that time that the State breached the plea agreement, so we address preservation first.

Neither Jones nor the State address whether an objection was required to preserve this claim, and the Court of Appeals twice addressed Jones' claim without addressing preservation. See *Jones I*, 2011 WL 6309613; *Jones II*, 2013 WL 5610136. Kansas follows a common-law rule that "constitutional grounds for reversal asserted for the first time on appeal are not properly preserved for appellate review" subject to three exceptions. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007).

A new legal theory may be asserted for the first time on appeal if: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite relying on the wrong ground or assigning a wrong reason for its decision. *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010); *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967) (citing 5 Am. Jur. 2d, Appeal and Error §§ 549, 727, pp. 34, 170-71).

This court just held in a case involving an alleged breach of a plea agreement that Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) requires an appellant raising a constitutional issue for the first time on appeal to affirmatively invoke and argue an exception to the general rule that such claims may not be raised for the first time on appeal. *State v. Godfrey*, 301 Kan. ___, Syl., 2015 WL _____ (No. 109,086, filed May 29, 2015). In that case, Godfrey's appellate brief made no reference to issue preservation and gave no explanation why his claim was properly before the court

9

for the first time on appeal as required by Rule 6.02(a)(5). The State raised lack of preservation as an objection in its response brief, and Godfrey again failed to proffer a reason why the appellate court should consider the issue in a reply. Based on our admonition in *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), warning future litigants about compliance with Rule 6.02(a)(5), we declined to address the issue. *Godfrey*, 301 Kan. at ___ (slip op. at 4-5).

In Jones' case we have a different problem because the State has not raised any objection to Jones' failure to comply with Rule 6.02(a)(5), the appeal predates our *Williams* decision, and Jones' challenge has been previously considered by both this court and the Court of Appeals. Under these circumstances, we choose to proceed on the merits.

*Failure to fulfill the State's obligation in the plea agreement*

During the sentencing hearing, the prosecutor acknowledged that the parties had a deal, stating, "I'm sort of bound by the plea agreement," but he did not confirm that the State was actually recommending probation or recite the agreed-upon bases for departure. Jones' first argument is that the State breached the plea agreement by failing to meet the minimum requirements for joining in a recommendation. She relies principally on *State v. Foster*, 39 Kan. App. 2d 380, 386-87, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008), but *Foster* addresses a different question—whether the prosecutor undermined the recommendation after making it. See *Urista*, 296 Kan. at 584-85.

In attempting to determine the minimum requirements for *making* an agreed-upon recommendation, *State v. Hill*, 247 Kan. 377, 799 P.2d 997 (1990), is more on point. In that case, Hill sought to set aside his guilty plea "because the State did not specifically state at the sentencing hearing . . . that it recommended that the defendant receive two

10

consecutive life sentences with the remaining sentences to run concurrently." 247 Kan. at 381. This court held the prosecutor was not required to restate the agreement's terms at sentencing because: (1) The same judge presided over both hearings and that judge was already informed about the recommendation from the plea hearing; (2) the prosecutor directed the sentencing judge to the PSI report which contained the recommendation; and (3) it was clear from the sentencing judge's comments that the judge was aware of the State's recommendation. 247 Kan. at 385-86.

But *Hill* is distinguishable because in Jones' case different judges presided over Jones' plea and sentencing hearings, the PSI report did not contain the State's sentencing recommendation, and the sentencing court made no comments demonstrating familiarity with the plea agreement's terms. In light of these differences, we must decide whether the prosecutor made the recommendation called for in Jones' plea agreement. We begin by considering whether the record reflects the sentencing court was aware of the recommendation the State agreed to make because the Court of Appeals panel members did not agree on this point, and the majority's answer appears to have driven the outcome below.

The *Jones II* majority held the sentencing court was aware of the parties' recommendations and the grounds supporting departure. See *Jones II*, 2013 WL 5610136, at *5. But that holding is not supported by any explanatory detail, and as Judge Atcheson stated in his dissent: "[T]hat conclusion is hardly plain from the record." 2013 WL 5610136, at *9. He outlined the indications supporting a different conclusion:

> "The district court judge taking Jones' plea and going over the agreement in detail at that
> time was not the judge imposing sentence. Those circumstances only enhance the duty on
> the State to be forthcoming at the sentencing hearing in making known fully and fairly its
> position on punishment. As I have noted, the district court judge imposing sentence on
> Jones did not so much as mention the plea agreement or explain his marked deviation

11

from it. The district court judge, however, specifically stated he reviewed the presentence investigation report and Jones' motion for a downward departure. The report doesn't set out the terms of the plea agreement. And the motion isn't in the record, so we don't know about it. The written plea agreement was not entered in the district court file as a distinct document; it appeared only as an unidentified exhibit to Jones' Acknowledgment of Rights and Entry of Plea. As a result, it wasn't patently catalogued in the court file. A sentencing court, of course, is not obligated to offer an explanation for rejecting a plea agreement. But the absence of that explanation and so much as even a direct reference to the plea agreement suggest the district court judge may not have fully appreciated the scope and terms of the agreement." 2013 WL 5610136, at *9 (Atcheson, J., dissenting).

Since the plea agreement was referenced at the hearing, one could give the sentencing judge the benefit of the doubt that he would have inquired further if he did not know the agreement's terms. See *United States v. Werner*, 317 F.3d 1168, 1170 (10th Cir. 2003) ("[W]e will not presume that an experienced district judge sentenced Mr. Thomas without awareness of the plea agreement, particularly when the terms of that agreement were contained in the [presentence report]."). But the *Hill* court relied on more than the sentencing court's statements demonstrating awareness of the agreement's terms, which is important because the State has the contractual duty here—not the court. See *Urista*, 296 Kan. at 583 ("parties to a plea agreement must act fairly and in good faith in carrying out the promises they have made"); *Copes*, 290 Kan. at 217 ("application of fundamental contract principles is generally the best means to fair enforcement of a plea agreement"); *State v Boley*, 279 Kan. 989, 993, 113 P.3d 248 (2005) (noting the same).

The prosecutor's conduct in Jones' case more closely resembles what we would expect of a prosecutor who agreed to stand silent as part of a plea agreement. And while the State's burden set by *Hill* is not high, the failure to openly express the State's agreed-to recommendation or direct the sentencing judge to the plea agreement's specific

provisions that the State was bound to and ensure it was in the court's possession is the tipping point.

The prosecutor had an affirmative duty arising from the plea agreement to recommend a particular sentence, which is what Jones bargained for when she agreed to plead guilty as charged. And the only consideration she received in exchange for the plea was the State's promise to join in her efforts to be sentenced to probation rather than imprisonment.

We hold the State breached its plea agreement with Jones. The prosecutor did not inform the court of the State's recommendation, refer the court to a document containing the recommendation, or otherwise make sure the sentencing court was aware of the recommendation.

The State raises no harmless error argument, so we need not consider that. See *Peterson*, 296 Kan. at 574 (declining to address whether breach of plea agreement was subject to constitutional harmless error standard because State failed to pursue the argument).

Our holding renders moot Jones' alternative argument that the prosecutor breached the plea agreement by undermining the probation recommendation.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, Jones' sentence is vacated, and the case is remanded for resentencing.

BEIER, J., dissenting: I respectfully dissent from the majority's decision. The State did not breach the plea agreement.

When asked for the State's sentencing recommendation, the prosecutor explicitly referred the district judge to the plea agreement. I am certain that the judge had the district court file before him, and the original of the plea agreement was, according to the record on appeal, filed with the Defendant's Acknowledgment of Rights and Entry of Plea in the district court a full month before the presentence investigation report. The presentence investigation report provides indispensable architecture for a sentencing judge. Its content and that of the preceding plea agreement could not have been overlooked or ignored. This conclusion also is supported by the district judge's statement that he did not see the prosecutor's argument "as going outside the plea agreement, there is just a disagreement as to the extent of the injuries." Again, this statement demonstrates the district judge's familiarity with the plea agreement. The prosecutor's reference to the plea agreement was shorthand, not a failure to communicate.

Further, the prosecutor's use of "sort of" in the phrase "sort of bound by the plea agreement" came in response to a repeated request for input from the judge. Read in context, it merely expressed understandable reluctance to run the risk of much elaboration beyond what was stated in the agreement. And the prosecutor's mention of the photographs of the victim's injuries was merely responsive to what appeared to be defense counsel's mistake or misrepresentation on that point. A prosecutor—even one bound by a plea agreement—is entitled to set the record straight when defense counsel's presentation may have left an inaccurate impression. See *State v. Peterson*, 296 Kan. 563, 571, 293 P.3d 730 (2013) (promise to stand silent at sentencing does not require prosecutor to remain silent in face of factual misstatements).

Under these circumstances, the defendant got what she bargained for. The State did not commit a sin of omission. It committed no sin, not even a venial one, and it should not be required to participate in the penitential rite of a new sentencing in exchange for this court's absolution.

NUSS, C.J., and LUCKERT, J., join in the foregoing dissenting opinion.