NOT DESIGNATED FOR PUBLICATION

No. 121,813

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHNNY HOGUE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed June 26, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., GREEN, J., and TIMOTHY J. CHAMBERS, District Judge, assigned.


PER CURIAM: This litigation arises out of a plea agreement between Johnny Hogue and the State. In particular, under the plea agreement, Hogue agreed to testify truthfully at a preliminary hearing in an unrelated murder case. And in exchange for his truthful testimony, the State agreed to dismiss some charges that it had filed against Hogue in a separate case. The State, however, later withdrew from the plea agreement, contending that Hogue had breached his part of the plea agreement. When Hogue moved to enforce the plea agreement, the trial court denied his motion. On appeal, Hogue argues that the trial court erred when it denied his motion to enforce his plea agreement. We

1

disagree. We conclude that Hogue breached his part of the plea agreement. As a result, we affirm.

The State charged Johnny Hogue with seven felonies and one misdemeanor, all related to violations of the Kansas Offender Registration Act (KORA), K.S.A. 2019 Supp. 22-4901 et seq. The State then made a written offer to dismiss the case in exchange for testimony in a separate murder case, *State v. Timothy Jones*, No. 2017 CR 1356. The offer read as follows:

> "In exchange for your truthful testimony at preliminary hearing in Wyandotte County Case Number 2017CR1356, and in exchange for your truthful testimony at a later jury trial in that same case should one take place, the State agrees to dismiss the case of 2017CR1128 in its entirety and the case shall not be refiled relating to the events contained within the charging information and affidavit. The State shall be bound to the terms of this agreement [regardless] of the final disposition of 2017CR1356. Further, the State shall consider the terms of the disposition agreement fulfilled if you testify at a preliminary hearing and the case is later disposed of before a trial takes place."

Hogue testified for the State at the preliminary hearing in *State v. Jones*. Then, Hogue sent a letter to Timothy Jones' attorney, which stated the following:

> "I have wrote down my conversations with the Detective and [T]immy to the best of my memory there was other conversations with the Det. in between the conversations I have wrote down here, but there was so much that was talked about that I just wrote down the main parts I remember most of. I learned all about t[he] Franky D. case through the Det. and then, and only the[n] did I have my conversation with [T]immy to let him know what the Det. wanted me to do/say. From the very [beginning] the Det. wanted me to put [T]immy behind the wheel. [T]he only reason I couldn't bring any of this up at the preliminary hearing is because [he] told me what questions he was going to ask and for [me] to answer just these and say nothing else. [T]here is n[o] way that I could know all the details of this case if it wasn't for the Det. telling me."

In response, the State withdrew from the plea agreement, maintaining that the letter indicated Hogue may not have testified truthfully at Jones' preliminary hearing. Then Hogue moved to enforce the plea agreement.

At a hearing on the motion to enforce the agreement, Hogue argued that he had fulfilled his requirements under the plea agreement by testifying at the preliminary hearing and that the letter did not suggest that his testimony was untruthful. Hogue pointed out that his preliminary hearing testimony matched the State's physical evidence, a fact that the State conceded. Besides, Hogue's attorney maintained that Hogue wrote the letter because of fear:  "He's labeled a, quote, snitch. He'll say anything. He'll write anything in a letter."

At the hearing, the State pointed out that Hogue was directly and repeatedly asked at the preliminary hearing how he obtained his information about the murder. Hogue testified that Jones had told him about the events related to the murder. The State noted that Hogue's letter contradicted this testimony when it stated that the police furnished him with this information. The State argued that the letter was Hogue's admission that, at worst, his response to this question at Jones' preliminary hearing was untruthful. The State also argued that, at best, the letter had made it impossible to know whether Hogue answered the question truthfully on how he had learned about the murder:  "[W]e cannot make a confident assessment that the testimony given at prelim was truthful." The State further argued that it could not use Hogue's testimony at trial after he sent the letter. The trial court denied Hogue's motion to enforce the plea agreement, finding that "Hogue did not uphold his end of the bargain."

The parties agreed to a bench trial on stipulated facts. The trial court found Hogue guilty of one count of aggravated violation of KORA. The trial court granted Hogue a dispositional departure to 36 months' probation, with an underlying sentence of 102 months in prison followed by 36 months of postrelease supervision.

Hogue timely appeals his conviction.

*Did the Trial Court Err in Denying Hogue's Motion to Enforce the Plea Agreement?*

On appeal, Hogue argues that, at the preliminary hearing in *State v. Jones*, he "testified to the [S]tate's satisfaction." Hogue argues that his obligation under the plea agreement was to testify truthfully at the preliminary hearing and to be available at trial should a trial occur. Hogue points out that he testified at the preliminary hearing. And he further contends that because Jones later entered a plea agreement with the State, this eliminated the necessity for his trial testimony. On that basis, Hogue asserts that he completed his obligation under the plea agreement, citing the following language from the agreement: "[T]he State shall consider the terms of the disposition agreement fulfilled if you testify at a preliminary hearing and the case is later disposed of before a trial takes place."

Next, Hogue contends that the State's problem arose after he testified at the preliminary hearing. Hogue argues that the plea agreement did not prohibit him from later questioning his preliminary hearing testimony in a letter. He contends that the letter, regardless of whether it affected the State's case, fell outside the terms of the plea agreement.

In any event, Hogue argues that this court should not credit the truth of the letter for the following reasons: "[T]he letter's poor grammar and predominantly equivocal statements alone make its actual content unreliable at best." And, thus, Hogue contends that the contents of the letter are more likely to be untrue than his sworn preliminary hearing testimony.

4

On appeal, the State argues that Hogue made his testimony useless. The State contends that Hogue's letter shows an intention to change his testimony if the Jones case went to trial. The State argues that using Hogue as a witness at trial would have been detrimental to its murder case. For example, the States points out that Jones' defense counsel could impeach Hogue's trial testimony by offering the letter into evidence, which the State maintains would negate the value of Hogue's trial testimony. Also, the State contends that the letter hindered its ability to prosecute Jones and was "a huge factor" in the decision to offer Jones a plea agreement. Thus, the State argues that Hogue failed to satisfactorily perform on his part of the agreement.

Alternatively, the State argues that "[e]ven if Hogue's [preliminary] testimony was true in the sense that it provided accurate information, his letter stating that he had been fed this information and had been coached in his testimony frustrated the very purpose of the testimony." To support its frustration of purpose argument, the State first notes that Kansas courts apply fundamental contract principles to fairly enforce plea agreements. *State v. Copes*, 290 Kan. 209, 217, 224 P.3d 571 (2010). The State then argues that its "principal purpose [was] substantially frustrated" without its fault. Restatement (Second) of Contracts § 265 (1981). The State contends that Hogue's letter was "the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made," and, thus, the State's "remaining duties to render performance are discharged." Restatement (Second) of Contracts § 265; see also *State v. Boley*, 279 Kan. 989, 994-97, 113 P.3d 248 (2005) (applying frustration of purpose doctrine to plea agreement).

Whether the State breached a plea agreement presents a question of law over which appellate courts exercise unlimited review. *State v. Urista*, 296 Kan. 576, 582-83, 293 P.3d 738 (2013); see *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015). But the trial court here made the factual finding that Hogue had violated the plea agreement rather than the State. When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The appellate court generally reviews the

5

factual findings under the substantial competent evidence standard. It has unlimited review of the conclusions of law based on those facts. *State v. Johnson*, 304 Kan. 924, 950, 376 P.3d 70 (2016).

"'[A]pplication of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea bargaining process may require a different analysis in some circumstances.'" *Jones*, 302 Kan. at 116 (quoting *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 [2013]). "An expectation inherent in all plea agreements is that each party will honor the terms of the agreement." *State v. Woodward*, 288 Kan. 297, 300, 202 P.3d 15 (2009).

Generally, our Supreme Court has held the following about plea agreements:

"There are three typical plea agreement promises prosecutors make that govern their conduct at sentencing: '(1) [A] promise to recommend a mutually agreed upon sentence; (2) a promise to take no position on a portion or specific aspect of the sentence, *e.g.*, whether consecutive or concurrent sentences should be imposed; and (3) a promise to remain silent at sentencing.'" *Jones*, 302 Kan. at 116 (quoting *Peterson*, 296 Kan. at 569).

The parties have stated in their briefs that the facts of this case are atypical because the plea agreement did not relate to a prosecutor's recommendations at sentencing. The parties are correct. In the absence of direct authority, we must draw guidance from the things in which the parties agreed to under the plea agreement.

Hogue and the State agree that Hogue told the truth as far as giving an account of events surrounding the murder. And his preliminary hearing testimony conformed to the physical evidence. Thus, the letter does not recant that part of his preliminary hearing testimony describing those events. Nevertheless, the letter questions how Hogue obtained

6

his information about the murder. When Hogue was asked at the preliminary hearing if the police had provided him with the information about the murder, he answered, "No." Indeed, he testified that Jones told him about the murder. On the other hand, Hogue's letter states that he learned *all* about the murder through the police.

Thus, we are left with two contradictory propositions. First, Hogue's preliminary hearing testimony was truthful when he testified that the police did not furnish him with the facts about the murder and that he learned about those facts of the murder through Jones. Second, Hogue's letter stating that he learned all about the murder through the police was contradictory of his preliminary hearing testimony. On that basis, these two contradictory propositions are incompatible; hence they are mutually exclusive.

Nevertheless, these two contradictory propositions may hold the answer to the question of whether the trial court correctly denied Hogue's motion to enforce the plea agreement. To that end, we must consider what the outcome would have been under each proposition. By way of example, Hogue's preliminary hearing testimony was that he received his information about the murder directly from Jones and not from the police. If his preliminary hearing testimony was false and the letter stated that it was false, then Hogue breached his part of the plea agreement because it required him to testify truthfully during his preliminary hearing testimony. And, thus, substantial competent evidence would have existed to support the trial court's conclusion that Hogue had breached his part of the plea agreement. See, e.g., *United States v. Donahey*, 529 F.2d 831, 832 (5th Cir. 1976) (holding that government is entitled to withdraw from plea bargain where defendant is in breach).

On the other hand, if Hogue learned about the murder directly from Jones, then his preliminary hearing testimony on that point would be true. Nevertheless, Hogue's letter contradicted his preliminary hearing testimony when it stated that he learned about the facts of the murder from the police. Under this factual scenario, Hogue would have

7

breached his part of the plea agreement after his preliminary hearing testimony when he sent his letter to Jones' attorney. Indeed, Hogue's letter would have left the way open for doubt about the truthfulness of his preliminary hearing testimony. On that basis, this would have obviously created a weakness in the State's murder case against Jones.

Hogue's obligation under the plea agreement was to testify truthfully. Hogue's letter recanting his preliminary hearing testimony was contrary to his obligation to testify truthfully during his preliminary hearing testimony. Fundamental contract principles apply to plea agreements, and in this case, it is the principle of a material failure of performance. See *Jones*, 302 Kan. at 116.

Our research has revealed no direct authority explaining the effect Hogue's recantation would have had on his plea agreement. But *Boley* discusses the importance of properly applying contract principles to plea agreements. 279 Kan. at 995. Our Supreme Court criticized this court for not examining the elements of the contract principles at issue there. With that in mind, we draw guidance from the elements of the material failure of performance doctrine.

Generally, any material failure of performance by one party, unless legally excused or justified, discharges the other party's duty of return performance: "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237. "[A] material failure of performance, including defective performance as well as an absence of performance, operates as the non-occurrence of a condition." Restatement (Second) of Contracts § 237, comment a.

Thus, material failure of one party results in "discharging the duty [of the other party] when the condition can no longer occur." Restatement (Second) of Contracts

8

§ 237, comment a. The two factors relevant here for determining material failure are as follows: (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected and (2) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. See Restatement (Second) of Contracts § 241.

First, the State was clearly deprived of the benefit which it reasonably expected. The State expected to use Hogue's testimony at Jones' preliminary hearing and again at Jones' murder trial. Hogue's letter deprived the State of the expected benefit of Hogue's preliminary hearing testimony at Jones' murder trial. Thus, the State was forced to change its plans and negotiate a plea agreement with Jones rather than proceed with his murder trial. For this reason, Hogue's letter recanting his preliminary hearing testimony was a material failure of performance.

Second, Hogue's act of writing a letter recanting his sworn preliminary hearing testimony did not comport with standards of good faith and fair dealing. He failed to give unambiguously truthful testimony because his later recantation described his preliminary hearing testimony as untruthful. This material failure of performance discharged the State's duty to honor the plea agreement. And so, the trial court properly denied Hogue's motion to enforce the plea agreement.

Affirmed.