NOT DESIGNATED FOR PUBLICATION

No. 122,758

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COREY A. EUBANKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed September 10, 2021. Affirmed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ISHERWOOD, J., and MCANANY, S.J.

PER CURIAM: In this appeal Corey A. Eubanks challenges the district court's award of restitution following his conviction of attempted theft. He also claims his sentence was based on an unconstitutional calculation of his criminal history. We find no error in the district court's order of restitution or in Eubanks' constitutional claim and, therefore, affirm.

This case involves a March 2018 theft at the Globe Quarry in Douglas County. A section of the fence owned by Ditch Diggers, Inc. on the border of the quarry property was cut, a locked trailer at the quarry was broken into, and a generator and chainsaws

1

owned by Ditch Diggers were stolen from the trailer. Also, about 400 feet of copper wire and three CAT batteries located at the back of the quarry property and owned by Alan Platt were stolen.

The evidence indicated that Eubanks was the culprit. In an amended complaint the State charged Eubanks with burglary of a nondwelling, two counts of theft, and criminal damage to property.

At Eubanks' October 30, 2019 plea hearing, his counsel advised the court that the parties had entered into a plea agreement. The prosecutor stated the agreement was as follows:

> "The defendant is going to plead either guilty or no contest to the amended charge of attempted theft, which is a subsection of receiving stolen property, a level 10 nonperson felony.
> "The State will agree to dismiss the remaining charges. Sentencing will be open. Defendant can argue whether—for the sentence of prison, probation, or whether it's consecutive or concurrent to what he's in KDOC for. And obviously the State will argue its position.
> "Pay restitution to the *victims*, and that amount is not available yet. 18-TR-2017, the State will dismiss at the defendant's costs, which he's free to ask the Court to waive." (Emphasis added.)

The amended complaint containing the sole charge of receiving stolen property was to be prepared and filed by the prosecutor.

The court asked defense counsel if the prosecutor's recital of the plea agreement was accurate, and defense counsel stated that it was. Eubanks then waived his right to a preliminary hearing on the amended charge to be filed, and the court proceeded with the plea hearing. The court asked:

2

"THE COURT: Okay. Now, the plea agreement was stated for the record. You heard [the prosecutor] state the plea agreement, correct?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Is that the plea agreement as you understand it?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Are you satisfied with that plea agreement?

"THE DEFENDANT: Yes, ma'am."

Eubanks then entered a plea of no contest to the attempted theft charge, which related to the property taken from Platt. The court found there was a factual basis for the charges based upon the testimony presented at the preliminary hearing on Eubanks' original charges. At that preliminary hearing, Platt had testified about the theft of his stolen copper wire and CAT batteries. The court then accepted Eubanks' plea and found him guilty of attempted theft. After the court scheduled the sentencing hearing, Eubanks' counsel advised the court: "[M]y client reminds me, and I just want to say this so he knows we're talking about it, as soon as we hear something about restitution, we may well want a hearing with respect to the restitution."

The next day, on October 31, 2019, the State filed the third amended complaint containing the sole charge of attempted theft. The charge related to the property taken from Platt.

Eubanks' sentencing hearing was held on December 12, 2019. The court asked if anyone wished to address the court on the issue of sentencing. Neither Platt nor anyone from Ditch Diggers was present, but the prosecutor stated:

"I do have a statement. . . . And this is from [Alan] Platt, P-L-A-T-T, one of the two victims. He said . . . we were finishing a phase of a [job] for Douglas County road when all of the copper wire and ground rods, along with the fiberoptic wire off the scales on the conveyer were taken off. Also, three large 4D batteries were removed . . . .

3

"The extra overtime and running to get the replacement parts was almost a full day long with the downtime of the plant. That was a lot of unneeded work. I can also say the owner of Ditch Diggers has also conveyed that this theft of the chainsaws and other property cost them significant downtime, so there was a direct impact on the parties because of the defendant's crimes."

The prosecutor continued:

"Judge, first of all, I will relate back to how this crime did impact the victims. There was almost $10,000 worth of property taken. And as a part of the plea agreement the defendant has agreed to pay restitution. [Alan Platt] is $4,425.71. . . . And to Ditch Diggers, Inc., $4,601.04. And I will note that that does not include any labor, any time lost. This is simply for the value of the stolen equipment that was not recovered."

Defense counsel then stated, "[W]ith respect to restitution we'd like to have a hearing on the subject of the amount of restitution." Defense counsel made no challenge to who was entitled to receive restitution. The court responded that a restitution hearing would require a continuance of the sentencing hearing. The court told defense counsel, "[Eubanks] absolutely has a right to a hearing. If he wants that, we cannot proceed to sentencing today. . . . [T]his issue [needs] to be cleared up before sentencing." Defense counsel then consulted with Eubanks and then told the court: "Well, I think under the circumstances since it's a very large amount of money and my client is entitled to justification by the *parties* involved as to *their losses*, I think we really need to have a hearing." [Emphasis added.] When asked how many witnesses the State would call at a restitution hearing, the prosecutor told the court she would call two. She continued:

"But I would like to put on the record that I provided a restitution order with the actual receipts for the—I mean, the value of the stolen property has been provided, so they're just going to take the stand and say exactly the same thing that's written here, and the defendant has agreed to pay restitution. So I've got two witnesses, Judge."

4

Defense counsel responded: "Judge, just a moment. My client has just indicated to me that under the circumstances he would just as soon go ahead and be sentenced. He just said that." The court then personally addressed Eubanks, who confirmed that he would like to proceed with sentencing without contesting the amount of restitution the State was requesting.

The court sentenced Eubanks to 10 months' imprisonment and 12 months' postrelease supervision. The district court stated:

> "I am going to order as a condition of your postrelease that you pay restitution to [Alan Platt] in the amount of $4,425.79, and to Ditch Diggers in the amount of $4,601.04. I should also note that that restitution can be worked on while you're in custody paying towards it as well."

The journal entry of judgment failed to indicate that the district court ordered restitution as part of postrelease supervision.

Eubanks appeals, claiming error in the district court's award of restitution, in the manner of payment, and in the court's determination of his criminal history.

*Restitution*

Eubanks asserts he did not agree to pay restitution on the four counts the State dismissed as part of his plea agreement. Eubanks asks this court to vacate the $4,601.04 restitution award to Ditch Diggers because the loss was unrelated to his only conviction for attempted theft of Platt's copper wire and CAT batteries.

Eubanks raises this issue for the first time on appeal. He did not challenge the restitution award to Ditch Diggers at any time before the district court. Ordinarily, a party

5

cannot assert a new argument on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015). But we can consider it when:

> "'(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason.' [Citations omitted.]" 301 Kan. at 1043.

We will consider the issue because it satisfies exception (1) above.

Here, there is no question that the parties entered into a plea agreement. There is no written plea agreement in the record. Rather, the contents of the agreement were stated by the parties in open court at Eubanks' plea hearing and there was no conflict between the parties as to what the agreement provided. Eubanks now claims those agreed terms were ambiguous. Under these circumstances, our review of Eubanks' claim is de novo.

K.S.A. 2020 Supp. 21-6604(b)(1) requires the sentencing court to order the defendant to pay restitution. The statute states: "[T]he court shall order the defendant to pay restitution, which shall include, *but not be limited to*, damage or loss caused by the defendant's crime." (Emphasis added.) K.S.A. 2020 Supp. 21-6604(b)(1). While this generally relates to damages caused by the defendant's crime of conviction, the defendant can agree to a different arrangement through a plea agreement. *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003); *State v. Ball*, 255 Kan. 694, 701, 877 P.2d 955 (1994) (parties' plea negotiations can include restitution on all charged offenses in exchange for the State to dismiss certain charges).

Eubanks was charged with burglary, two counts of theft, and criminal damage to property. The State agreed to reduce the two counts of theft to one count of attempted theft and to dismiss the remaining charges of burglary and criminal damage to property.

In exchange, Eubanks agreed to plead to the single reduced charge of attempted theft and pay restitution to the victims, whose identities were made clear at the hearings to include both Platt and Ditch Diggers.

To recount, at the plea hearing the prosecutor advised the court that the plea agreement provided Eubanks would pay restitution "to the *victims*." (Emphasis added.) The victims were Platt and Ditch Diggers. Defense counsel advised the court that the prosecutor's recitation of the terms of the agreement was accurate. The court then asked Eubanks if the plea agreement was as the prosecutor described, and Eubanks confirmed that it was. Eubanks also confirmed that he was satisfied with the plea agreement.

At Eubanks' sentencing hearing, the prosecutor read a statement from Platt about his losses from the theft. The prosecutor also advised the court that Ditch Diggers had "also conveyed that this theft of the chainsaws and other property cost them significant downtime, so there was a direct impact on the parties because of the defendant's crimes."

The prosecutor then described "how this crime did impact the *victims*." (Emphasis added.) She noted Eubanks' agreement to pay restitution as part of the plea agreement and identified Pratt's loss as $4,425.71 and Ditch Digger's loss as $4,601.04.

Defense counsel stated that Eubanks wanted a hearing on the amount of restitution, making no mention of any claim that the restitution should only be paid to Pratt and not to Ditch Digger. In fact, he explained that "it's a very large amount of money and my client is entitled to justification by the *parties* involved as to *their losses*." (Emphases added.) The prosecutor advised the court that if a restitution hearing were held, she would call only two witnesses—obviously Platt and a representative of Ditch Diggers—to testify about the value of the property stolen.

7

All the while, throughout these two hearings, Eubanks and his counsel sat on their hands while the prosecutor described the restitution order as covering the losses of both Platt and Ditch Diggers. In fact, they affirmatively confirmed that the agreement covered both victims.

There is no ambiguity in the plea agreement in its reference to restitution being paid to the *victims*. It was clear to the prosecutor, Eubanks, and Eubanks' defense counsel who the victims were as contemplated by the agreement. It was clear to the court. And it is clear to us.

We find no merit to Eubanks' restitution argument.

*The Payment of Restitution as a Condition of Postrelease Supervision*

Eubanks' second complaint about the restitution order is that it resulted in an illegal sentence because the district court lacked the authority to order him to pay restitution as a condition of postrelease supervision. Eubanks' illegal sentence claim was not raised below, but the law permits it to be raised now for the first time on appeal. See *State v. Dickey*, 301 Kan. 1018, 1027, 350 P.3d 1054 (2015). Thus, the issue is properly before this court even though Eubanks failed to object to the district court's order below.

An "illegal sentence" is defined in K.S.A. 2020 Supp. 22-3504(c)(1) as a sentence "[i]mposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." Whether a sentence is illegal is a matter of statutory interpretation which is a question of law over which we have unlimited review. *State v. Keel*, 302 Kan. 560, 571-72, 357 P.3d 251 (2015).

8

K.S.A. 2020 Supp. 21-6604(b)(1), discussed earlier in this opinion, also provides that restitution shall be due immediately unless "[t]he court orders that the defendant be given a specific time to pay." Generally, the Prisoner Review Board is given the authority to set conditions of postrelease supervision instead of the district court. K.S.A. 2020 Supp. 21-6803(p); K.S.A. 2020 Supp. 22-3717(n). But K.S.A. 2020 Supp. 21-6604(e) states, in pertinent part:

> "If the court commits the defendant to the custody of the secretary of corrections or to jail, the court may specify in its order the amount of restitution to be paid and the person to whom it shall be paid *if restitution is later ordered as a condition of* parole, conditional release or *postrelease supervision*." (Emphases added.)

The statute dealing specifically with postrelease supervision, K.S.A. 2020 Supp. 22-3717(n), states:

> "If the court that sentenced an inmate specified at the time of sentencing the amount and the recipient of any restitution ordered as a condition of parole or postrelease supervision, the prisoner review board shall order as a condition of parole or postrelease supervision that the inmate pay restitution in the amount and manner provided in the journal entry unless the board finds compelling circumstances that would render a plan of restitution unworkable."

At sentencing, the district court pronounced from the bench the amount and the recipients of restitution to be paid as a condition of Eubanks' postrelease supervision—specifically, $4,425.79 to Platt and $4,601.04 to Ditch Diggers. But the journal entry failed to direct that this restitution be paid as a condition of Eubanks' postrelease supervision.

"'A criminal sentence is effective upon pronouncement from the bench; it does not derive its effectiveness from the journal entry. A journal entry that imposes a sentence at

variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed.'" *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012). An erroneous journal entry can be corrected by a nunc pro tunc order to reflect the sentence pronounced from the bench. 294 Kan. at 677.

Here, the Prisoner Review Board was provided the erroneous journal entry and was not aware the court ordered that restitution was to be a condition of Eubanks' postrelease supervision.

Accordingly we find no merit in Eubanks' assertion that the district court lacked the authority to order him to pay restitution as a condition of postrelease supervision. Instead, we remand for the district court to issue a new journal entry by way of an order nunc pro tunc clarifying that the payment of restitution is to be a condition of Eubanks' postrelease supervision.

*The Constitutionality under the Kansas Constitution of the Manner of Calculating Eubank's Criminal History Score*

Eubanks claims the Kansas Sentencing Guidelines Act (KSGA) violates section 5 of the Kansas Constitution Bill of Rights by improperly permitting judicial findings of an offender's prior convictions in order to establish a presumptive sentence for the current crime of conviction. Eubanks argues the sentencing scheme is unconstitutional because it infringes on the common-law right to a jury trial on penalty-enhancing prior conviction findings.

While Eubanks did not challenge the constitutionality of the KSGA at sentencing, he may do so now because to do so is necessary to prevent the denial of a claimed fundamental right. See *State v. Jones*, 302 Kan. 111, 117, 351 P.3d 1228 (2015).

10

A constitutional challenge to the KSGA involves a question of law over which we have unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Section 5 of the Kansas Constitution Bill of Rights states:  "The right of trial by jury shall be inviolate." In criminal cases, section 5 guarantees defendants the right to a trial by jury on any issue of fact that would have been tried before a jury at common law. *State v. Love*, 305 Kan. 716, 735, 387 P.3d 820 (2017). The KSGA, however, relies on judicial—not jury—findings of a defendant's prior convictions to establish the presumptive sentence for the defendant's current crime of conviction. See K.S.A. 2020 Supp. 21-6814(a); *Wetrich*, 307 Kan. at 555.

Eubanks' constitutional challenge was addressed and rejected in *State v. Albano*, 313 Kan. 638, 657, 487 P.3d 750 (2021), wherein the court stated:

> "There is no evidence to suggest the common law required sentence-enhancing prior conviction to be proven to a jury in Kansas criminal proceedings at the time the Kansas Constitution was adopted. To the contrary, our earliest decision addressing this issue recognized the traditional function of the jury is to decide issues of fact relevant to guilt or innocence, and the traditional function of the court is to determine punishment and to make findings relevant thereto, including a defendant's criminal history. . . . Accordingly, we hold the KSGA provisions authorizing the court to make criminal history findings for purposes of imposing a sentence do not violate section 5 because such judicial findings do not impair the traditional functions of the jury in Kansas criminal proceedings."

We are bound by *Albano* absent some indication our Supreme Court is departing from this holding. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We see no such indication. Accordingly, Eubanks' constitutional claim fails.

Affirmed and remanded for issuance of an order nunc pro tunc.

11